CONERLY v LIPTZEN

1. Landlord and Tenant—Guests—Duty of Landlord.

Duty which a landlord owes to his tenants and his tenants' guests with regard to the common areas of the building, those areas the control of which has been retained by the landlord, is analogous to that which is owed an invitee.

2. Negligence—Res Ipsa Loquitur—Evidence.

Michigan does not follow the doctrine of *res ipsa loquitur,* but allows negligence to be inferred from circumstantial evidence; the question is whether, in the light of all of the evidence— circumstantial, direct, or whatsoever it may be, the plaintiff has produced sufficient evidence from which a jury might make a finding of negligence.

3. Negligence—Evidence.

Defendant's motion for directed verdict was properly denied where plaintiff introduced evidence that she was injured while visiting a friend in defendant's apartment building when the elevator in the building fell, that the elevator had previously malfunctioned, and that defendant knew of the malfunctioning.

4. Trial—Prejudicial Remarks—Instructions to Jury.

Plaintiffs' attorney did not cause reversible error during cross-examination and final argument when he represented defendant as a wealthy absentee landlord unconcerned about the suit, because the jury was thrice instructed that its verdict should in no way be based on sympathy for plaintiff or defendant's superior economic status, thus curing any prejudice; and where there was no objection to plaintiffs' reference to defendant's absence during final arguments, the evidence of defendant's wealth was minimal.

REFERENCES FOR POINTS IN HEADNOTES

[1] 49 Am Jur 2d, Landlord and Tenant § 780.
[2, 3] 57 Am Jur 2d, Negligence § 7.
[4] 53 Am Jur, Trial §§ 499, 506.

Appeal from Wayne, Charles S. Farmer, J. Submitted Division 1 April 10, 1972, at Detroit. (Docket No. 11760.) Decided May 30, 1972. Leave to appeal denied, 388 Mich 779.

Complaint by Norma Conerly and Theodore Conerly against Sam Liptzen for damages for personal injuries received in an elevator fall. Verdict and judgment for plaintiffs. Defendant appeals. Affirmed.

*Edward Grebs,* for plaintiffs.

*Sugar, Schwartz, Silver, Schwartz & Tyler* (by *Charles C. Warner* and *Hayim I. Gross),* for defendant.

Before: FITZGERALD, P. J., and McGREGOR and O'HARA,* JJ.

FITZGERALD, P. J. Norma Conerly, hereinafter plaintiff, went to visit a friend who lived in an apartment building at 329 Holbrook, Detroit. She rode the elevator to the fourth floor, found her friend not home, and returned to the elevator. When she pushed the button for the main floor, sparks flew, she smelled something like rubber burning, and the elevator plummeted. The elevator came to an abrupt stop just below the first floor, throwing plaintiff to her knees and rendering her momentarily unconscious. She next remembered a man pushing the outside button in an attempt to raise the elevator to floor level so that he could assist her. The elevator moved haltingly upwards and the man assisted her from the elevator. The police were then called and plaintiff was taken to the hospital. She sustained injuries to her

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

back and right wrist, leg and foot. Plaintiff and her husband sued for damages.

The manager of the apartment building testified that the elevator in question was the only one servicing the 84 units in the building.

After the plaintiffs and defendant rested their cases, the latter renewed a motion for a directed verdict, the motion was denied, and the jury awarded Mr. and Mrs. Conerly $60,000. Defendant subsequently made a motion for judgment notwithstanding the verdict or new trial, which motion was denied by the trial judge.

Two issues arise on appeal. First, did plaintiffs offer sufficient proof of the elements of a cause of action for negligence to survive defendant's motion for a directed verdict?

Defendant contends that plaintiffs did not show that there was a defect in the elevator of which the defendant should have had notice. Citing a series of cases which supposedly stand for the proposition that "[t]here must either be a showing of active negligence * * * or there must be a showing of notice, whether actual or constructive, of a defect", defendant further argues, under issue 2, *infra,* that, since proof was offered that the elevator could not have fallen, it was the duty of plaintiffs to show how it could have happened; in other words, plaintiff was obligated to demonstrate what caused her injuries, and mere testimony that the elevator fell was not sufficient to sustain that burden.

Plaintiff responds that she showed that the elevator was old and constantly malfunctioning; the defendant was thus on notice that the machinery "had previously shown inefficiency" and "dangerous irregularities". Notice was a fact question for the jury, she says, and there was sufficient evi-

dence from which the jury could have inferred negligent conduct on the part of the defendant. She claims plaintiffs did not have to prove the precise cause of the accident, since an elevator does not usually fall if it is properly maintained and since the elevator was in the exclusive control of the defendant. Finally, the so-called "conjectural cause" cases are not applicable since defendant did not submit a theory of causation but attempted to prove the elevator could not have fallen.

The instant case does not require a foray into the jungles of proximate cause. If there was a fall-related defect in defendant's elevator, it was certainly foreseeable that an injury might have been caused thereby. Instead, the case turns upon an application of the three essential ingredients of a cause of action for negligence—duty, lack of reasonable care, and cause in fact.

The duty which a landlord owes to his tenants and his tenants' guests with regard to the so-called common areas of the building, that is, those areas the control of which has been retained by the landlord, is analogous to that which is owed an invitee. Prosser delineates this obligation more fully in his discussion of the duty owed invitees:

"The occupier is not an insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection. But the obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable

from the arrangement or use." (Prosser, Torts [3d ed], § 61, pp 402–403; footnotes omitted; see also, *Lipsitz v Schechter,* 377 Mich 685 [1966], *infra.)*

It is important to note that the rules set out above go only to the existence of a duty and the conduct which is necessary to fulfill that duty; in short, they go only to what is generally thought of as negligence. Presumably, it is still necessary for a plaintiff to show that defendant's negligence caused, or substantially caused, the injury.

Michigan does not purport to follow the doctrine of *res ipsa loquitur,* but it achieves the same result by allowing negligence to be inferred from circumstantial evidence. The recent leading cases in this regard are *Gadde v Michigan Consolidated Gas,* 377 Mich 117 (1966), and *Lipsitz v Schechter,* 377 Mich 685 (1966). According to the latter (p 690), "[t]he question * * * is whether, in the light of *all of the evidence*—circumstantial, direct, or whatsoever it may be, the plaintiff has produced sufficient evidence from which a jury might make a finding of negligence".

*Robinson v Wright & Co,* 94 Mich 283 (1892), *Elsey v J L Hudson Co,* 189 Mich 135 (1915), and *Bradley v Burdick Hotel Co,* 306 Mich 600 (1943), each involved the sudden drop or fall of an elevator. In *Robinson,* although there was testimony that a certain hook had slipped and a pin which held the wheel on the axle had become dislodged, the former was a result, not a cause, of the fall, and there was no evidence that the pin was out or loose before the accident or that ordinary use might have loosened it. According to the Court (p 287), "[t]he sudden breaking or giving way of a piece of machinery, properly constructed, is not sufficient to justify the conclusion of negligence". In *Elsey,* the trial court's directed verdict for the

defendant was upheld, since "no cause was shown why the elevator dropped" and "there was no evidence that there had been any previous trouble with it". In *Bradley,* on the other hand, plaintiff did offer evidence that the elevator was not equipped with effective, modern safety devices, and an expert witness also questioned whether the devices which were used had been properly installed. The Court held that it was proper to allow the jury to consider the factual question of defendant's negligence.

On three occasions in recent years, the Supreme Court has reversed decisions of the trial court or this Court holding that plaintiff had not established defendant's negligence or the cause of plaintiff's injury. Those cases are *Gadde v Michigan Consolidated Gas, supra; Lipsitz v Schechter, supra,* and *Schedlbauer v Chris-Craft Corp,* 381 Mich 217 (1968). In each of these cases, however, there was evidence of, or the evidence permitted an inference of, a relatively specific cause of defendant's injury; plaintiff, in other words, showed more than a mere accident. In *Gadde,* the explosion which injured plaintiff was caused by a gas leak; in *Lipsitz,* the screen which fell on plaintiff was quite possibly the result of loose fastenings; in *Schedlbauer,* there was evidence that the explosion which sank plaintiffs' boat was the result of a defective fuel pump diaphragm.

In *Cusumano v Stroh Brewery Co,* 26 Mich App 549 (1970), plaintiff was injured by an exploding beer bottle, and a directed verdict for defendant was reversed. Although this Court hypothesized as to how the explosion might have occurred, there is no indication that plaintiff offered any proof on the point. However, the Court noted that "defendant had control over both the charging and inspec-

tion of the bottles"; stated differently, it was almost impossible for plaintiff to demonstrate the cause of the accident after it occurred. In this regard, a statement of the Court in *Schedlbauer, supra,* is instructive:

"In every action for negligence it is the duty of the plaintiff to prove by the most accurate evidence that is reasonably available to him the particular defect or act or omission which to him was the cause of the injury for which he would recover. [Citations omitted.] That is precisely true of evidence which is within his control." (p 231.)

A similar holding appears in *Martin v King Riding Device Co,* 14 Mich App 480 (1968). Plaintiff was injured when the cable on an amusement park ride broke. He produced expert witnesses who noted that certain load bearing cables were visibly cracked and who opined that "abrasions found on one of the cables would not have been present had the cable been properly fastened". Even with this proof, the Court felt that the following point should be made:

"We have not invariably thrown upon the injured passenger the often impossible burden of pointing out by direct evidence on his main case the specific breach of duty by the carrier resulting in injury, especially where the carrier is in sole possession of the facts." (p 485; quoting *Mitcham v Detroit,* 355 Mich 182, 189 [1959].)

These cases lead us to the conclusion that the trial court properly denied the motion for a directed verdict.

Issue two asks whether reversible error was committed when plaintiffs' attorney, during cross-examination and final argument, represented de-

fendant as a wealthy absentee landlord, not concerned about the suit.

It is contended that plaintiffs' attorney attempted to characterize defendant "as an absentee slum landlord, who owns numerous buildings in the area, which in fact was not true, and to characterize him as a man so unconcerned with the course of this lawsuit that he could not even be bothered to return from Florida during the course of the trial".

The trial judge included in his instructions to the jury these charges:

"As the court indicated, members of the jury, it is your duty to determine the facts and evidence received in open court. You are to apply the law to the facts and in this way decide the case. You may not let sympathy or prejudice influence you in your decision whatsoever.

*  *  *

"The landlord here is entitled to the same fair and unprejudiced treatment as the plaintiff, who is an individual, and anyone under like circumstances, and it is your duty to decide the case with the same impartiality you would use in deciding a case between other individuals."

A review of the record indicates that a reversal is not mandated for the following reasons: (1) the jury was thrice instructed that its verdict should in no way be based on sympathy for plaintiff or defendant's superior economic status, thus curing any prejudice (see *Owen v Birmingham Federal Savings,* 27 Mich App 148 [1970]); (2) the only objection raised to plaintiffs' final arguments was to plaintiffs' implication that defendant was not ill; there was no objection to plaintiffs' reference to defendant's absence, but defendant's attorney instead chose to try to explain his client's absence during his (attorney's) own final argument; (3) the

evidence of defendant's wealth was minimal; plaintiffs are correct in pointing out that the building manager responded negatively when asked if defendant owned other buildings on the block; (4) defendant adduces no substantial authority for his argument.

For the foregoing reasons, the jury verdict is affirmed. Costs to appellees.

All concurred.