GRANDBERRY-LOVETTE v GARASCIA

Docket No. 311668. Submitted December 11, 2013, at Detroit. Decided
     January 2, 2014, at 9:15 a.m.

     Charlotte Grandberry-Lovette brought an action in the Macomb
     Circuit Court against Mark Garascia, seeking damages for injuries
     sustained when she fell while climbing the steps to the front porch
     of a rental home owned by defendant. The fall occurred when
     plaintiff, a healthcare aide who assisted residents living in the
     rental home, stepped on part of the decorative brick border of the
     concrete steps and the bricks broke loose. Defendant moved for
     summary disposition on the basis that there was no evidence that
     he had actual or constructive notice that the steps were defective.
     The court, Matthew S. Switalski, J., granted the motion and
     dismissed plaintiff's claims on the basis that plaintiff had failed to
     establish a question of fact regarding whether defendant had
     notice of the defective condition. The court determined that there
     was no evidence that defendant had actual or constructive knowl-
     edge that the bricks had come loose and that plaintiff failed to
     establish that defendant's actual regime to inspect the steps was
     inadequate. Plaintiff appealed.

          The Court of Appeals *held*:

          1. Defendant owed plaintiff, an invitee, the highest duty of
     care. Defendant had duties to warn plaintiff about any known
     dangers and to inspect the premises for latent defects and,
     depending on the circumstances, make any necessary repairs or
     warn of any discovered hazards. Because defendant had a duty to
     inspect for latent dangers, he could be liable for harm caused by a
     latent dangerous condition if the dangerous condition was of a
     kind or sort that he would have discovered by the exercise of
     reasonable care.

          2. The failure to properly inspect may constitute negligence if
     a reasonable inspection would have revealed the dangerous condi-
     tion giving rise to an injury. When a premises possessor fails to
     inspect his or her property, or conducts an inadequate inspection,
     the law will impute knowledge of the dangerous condition to the
     premises possessor if the dangerous condition is of such a charac-

ter or has existed for a sufficient time that a reasonable premises possessor would have discovered it.

3. Defendant, as the moving party, had to establish that it was beyond genuine factual dispute that he lacked constructive notice of the defective condition.

4. A premises possessor has no duty to rectify dangerous conditions that are so obvious that an invitee might reasonably be expected to discover them. The open and obvious danger doctrine cuts off a premises possessor's liability if the invitee should have discovered the condition and realized its danger. A dangerous condition is open and obvious if an average user with ordinary intelligence acting under the same conditions would have been able to discover the danger and the risk presented by the condition upon casual inspection.

5. An invitee does not have a duty to be constantly and vigilantly scanning the premises possessor's land for latent defects.

6. A premises possessor has a duty to be reasonably sure that he or she is not inviting his or her invitees into danger and, to that end, must exercise ordinary care and prudence to render the premises reasonably safe for the visit. A premises possessor must take reasonable care to know the actual condition of the premises and undertake the type of inspection that a reasonably prudent premises possessor would exercise under similar circumstances to protect his or her invitee.

7. For purposes of summary disposition, a premises possessor cannot invariably establish that he or she did not have constructive notice of a dangerous condition by showing that the dangerous condition would not have been discovered during a casual inspection. Rather, the premises possessor must show that the type of inspection that a reasonably prudent premises possessor would have undertaken under the same circumstances would not have revealed the dangerous condition at issue. If, under the totality of the circumstances, a reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury from finding that the premises possessor would have discovered the hazard in the exercise of reasonable care notwithstanding its latent character.

8. Defendant did not meet his burden to demonstrate that the undisputed facts showed that he did not have constructive notice of the defect; this would have entailed presenting evidence that a

reasonably prudent premises possessor operating under similar circumstances would not have discovered that the bricks had come loose. Because defendant failed to properly support his motion, the burden to come forward with evidence to establish a question of fact on this issue did not shift to plaintiff and the trial court should have denied defendant's motion on that basis. Nevertheless, there was evidence that would support a finding that defendant had constructive notice. The evidence was sufficient to allow a reasonable fact-finder to conclude that defendant would have discovered the loose bricks in the exercise of reasonable care. The evidence was sufficient to create a question of fact regarding whether defendant had constructive notice of the defect. A question of fact remained regarding whether defendant would have discovered the danger posed by the steps with a reasonable and timely inspection. The trial court erred by determining that the evidence showed that defendant did not have actual or constructive notice that the steps were defective.

Reversed and remanded.

O'CONNELL, J., dissenting, stated that the majority opinion creates a new doctrine of anticipatory notice that has never been recognized in Michigan and should not be applied. The record contains nothing to create a factual issue about constructive notice. Plaintiff presented no evidence to establish that defendant was aware of a defect in any part of the steps at the time plaintiff fell. Defendant's prior repair of the steps did not give him constructive notice that a future defect might occur or create a continual duty to scrutinize the steps. Summary disposition was proper because no issue of material fact existed regarding whether defendant had constructive notice of the alleged defect.

1. NEGLIGENCE — PREMISES POSSESSORS — DANGEROUS CONDITIONS — IMPUTED KNOWLEDGE.

When a premises possessor fails to inspect his or her property or conducts an inadequate inspection, the law imputes to the premises possessor knowledge of a dangerous condition with regard to the premises if the dangerous condition is of such a character or has existed for a sufficient time that a reasonable premises possessor would have discovered it.

2. NEGLIGENCE — PREMISES POSSESSORS — INVITEES — DUTY TO INSPECT PREMISES.

A premises possessor, in order to protect invitees, must take reasonable care to know the actual condition of the premises and

undertake the type of inspection of the premises that a reasonably prudent premises possessor would exercise under similar circumstances.

3. NEGLIGENCE — PREMISES POSSESSORS — DANGEROUS CONDITIONS — CONSTRUCTIVE NOTICE — INSPECTION OF PREMISES.

A premises possessor, for purposes of a motion for summary disposition, cannot invariably establish that he or she did not have constructive notice of a dangerous condition with regard to the premises by showing that the dangerous condition would not have been discovered during a casual inspection; the premises possessor must show that the type of inspection that a reasonably prudent premises possessor would have undertaken under the same circumstances would not have revealed the dangerous condition; if, under the totality of the circumstances, a reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury from finding that the premises possessor would have discovered the hazard in the exercise of reasonable care notwithstanding its latent character.

*Ravid & Associates, PC* (by *Jeffrey S. Hayes* and *Keith M. Banka*), for plaintiff.

*Lupo & Koczkur, PC* (by *Paul S. Koczkur* and *Kenneth L. Lupo*), for defendant.

Before: JANSEN, P.J., and O'CONNELL and M. J. KELLY, JJ.

M. J. KELLY, J. In this suit to recover damages resulting from a fall, plaintiff, Charlotte Grandberry-Lovette, appeals by right the trial court's order granting a motion for summary disposition under MCR 2.116(C)(10) by defendant Mark Garascia. We conclude that the trial court erred when it granted Garascia's motion for summary disposition. Specifically, because Garascia failed to establish that there was no genuine factual dispute regarding whether he had constructive notice of the defective condition at issue, he was not

entitled to have Grandberry-Lovette's claim dismissed on the basis that he did not have such notice. Accordingly, we reverse and remand for further proceedings.

## I. BASIC FACTS

Garascia owned a single-family home in 2010 that he leased through a county-operated program to several persons with disabilities. Garascia testified that he had been a licensed residential builder for approximately 20 years and had built his own house. He had previously worked for his father's construction company and sometimes worked as a bricklayer.

Grandberry-Lovette testified that the steps leading to the home's porch were concrete with a decorative brick border. Garascia stated that, approximately 9 to 18 months before the fall at issue, he received a call about the need to repair the steps. When he examined the steps, he noticed that some bricks had come out and others were loose. He cleaned off the mortar from the bricks and removed anything that was loose. He then reapplied the mortar to the bricks and put the steps back together. He inspected the remainder of the steps and "everything else was in satisfactory condition."

Garascia testified that it was normal for bricks to come loose after Michigan winters: "We get the thaw and frost, thaw and frost. They do come loose." After he repaired the steps, Garascia did not receive any further complaints regarding the steps. He also visited the property several times and did not "observe" any defects. Garascia stated that he just makes a visual inspection when he visits the property, which is usually during the spring and summer months.

In April 2010, Grandberry-Lovette worked as a healthcare aide and had been assigned to assist the residents living at Grascia's rental home during the

midnight shift. Grandberry-Lovette arrived at the home shortly before her shift; she parked her truck, grabbed her lunch, and walked toward the home's front entrance. She began to climb the steps to the front porch. When she stepped on the second step, "the bricks came loose." She testified: "I walked up and when I put my right foot on the step, it crumbled." She fell forward and suffered various injuries.

Garascia testified that the bricks that he had previously repaired were not the bricks that were involved in Grandberry-Lovette's fall.

Grandberry-Lovette sued Garascia in September 2011. She alleged, in relevant part, that Garascia had a duty to "timely and adequately" inspect the steps and ensure that the steps were in good repair or warn his invitees—including her—about the dangerous condition of the steps, which he did not do. She further alleged that Garascia's breach of these duties proximately caused her injuries.

In May 2012, Garascia moved for summary disposition under MCR 2.116(C)(10). Garascia argued that there was no evidence that he had actual or constructive notice that the steps had any problems. He noted that he had not received any complaints about the steps since he last repaired them and had not himself noticed any problems with the steps during his visits to the property. He also cited Grandberry-Lovette's testimony that she also had not had any problems with the steps before her fall.

In addition, relying on an unpublished opinion per curiam of the Court of Appeals, Garascia argued that he could not be charged with constructive notice of a defective condition that was not visible on casual inspection because, if a condition is of a kind or sort that a plaintiff could not see it, then the defendant cannot be

expected to see it either. Garascia also maintained that, to the extent that the dangerous character of the bricks was visible on casual inspection, he had no duty to repair the condition under the open and obvious danger doctrine.

The trial court issued its opinion and order in July 2012. The trial court agreed that there was no evidence that Garascia had actual or constructive knowledge that the bricks at issue had come loose and posed a danger. The trial court also determined that Grandberry-Lovette failed to establish that Garascia's actual inspection regime was inadequate: "[T]he record is devoid of any evidence suggesting [Garascia] would or should have discovered the allegedly defective condition had he inspected the steps after December 2009 but before April 9, 2010." Because Grandberry-Lovette failed to establish a question of fact regarding whether Garascia had notice of the defective condition, the trial court dismissed her claims.

Grandberry-Lovette now appeals.

## II. PREMISES LIABILITY AND NOTICE

### A. STANDARDS OF REVIEW

Grandberry-Lovette argues on appeal that the trial court erred when it determined that Garascia established that there was no question of fact that he did not have actual or constructive notice that the steps were defective and granted summary disposition on that basis. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo the proper interpretation and application of the common law, such as the law governing

premises liability. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

### B. THE DUTY TO INSPECT AND CONSTRUCTIVE NOTICE

The parties do not dispute that Grandberry-Lovette was an invitee at the time of her visit to Garascia's property. An invitee is a person who enters upon another's land with an "implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591, 597; 614 NW2d 88 (2000) (quotation marks and citation omitted; alterations in original). Garascia, therefore, owed Grandberry-Lovette the highest duty of care. *Id.* He not only had to warn Grandberry-Lovette about any known dangers, but also had a duty "to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards." *Id.* Because Garascia had a duty to inspect his premises for latent dangers, he could be liable for harm caused by a latent dangerous condition if the dangerous condition was of a kind or sort that "by the exercise of reasonable care" he would have discovered. *Id.*

The duty to inspect one's premises to ensure that the premises are safe for invitees is inextricably linked to the concept of constructive notice. Even if the premises possessor does not have actual knowledge of a dangerous condition—as would be the case for a dangerous condition created by some third party or through gradual deterioration—Michigan courts have long recognized that the law will impute knowledge of the dangerous condition to the premises possessor if the premises possessor should have discovered the dangerous condition in the exercise of reasonable care. See

*Siegel v Detroit City Ice & Fuel Co,* 324 Mich 205, 211-212; 36 NW2d 719 (1949); *Hulett v Great Atlantic & Pacific Tea Co,* 299 Mich 59, 68; 299 NW 807 (1941) quoting *Kroger Grocery & Baking Co v Diebold,* 276 Ky 349, 352; 124 SW2d 505 (1939) (explaining that " '[n]egligence may consist either in failure on the part of the store proprietor to discover the dangerous condition, though created by a third person, within a reasonable time, or in the creation of the dangerous condition by himself or his agents or servants' "); *Samuelson v Cleveland Iron Mining Co,* 49 Mich 164, 170; 13 NW 499 (1882) (COOLEY, J.) (stating that a premises possessor has the duty to warn of dangerous conditions about which he or she actually knows "or ought to know" and characterizing that concept as "very just and very familiar"). As our Supreme Court explained more than 80 years ago:

> A good expression of the rule of liability, applicable in such cases, is found in an English case to the effect that the proprietor of such a structure is *not a warrantor or insurer* that it is absolutely safe, but that he impliedly warrants that it is safe for the purpose intended, save only as to those defects which are unseen, unknown, and undiscoverable,— not only unknown to himself, but undiscoverable by the exercise of any reasonable skill and diligence, or by any ordinary and reasonable means of inquiry and examination. Such being the nature of the obligation, it is obvious that the proprietor of such a building is under a *continuing duty of inspection,* to the end of seeing that it is reasonably safe for the protection of those whom he invites to come into it; and that, if he neglects his duty in this respect, so that it becomes unsafe, the question of his *knowledge* or *ignorance* of the defect which renders it unsafe is immaterial. [*Sullivan v Detroit & Windsor Ferry Co,* 255 Mich 575, 577; 238 NW 221 (1931) (quotation marks and citation omitted).]

Accordingly, the failure to properly inspect may constitute negligence if a reasonable inspection would have revealed the dangerous condition giving rise to an

injury.[1] *Hulett*, 299 Mich at 67 ("If a condition liable to cause personal injury to a customer is occasioned by another customer, then liability of the storekeeper must rest upon failure to exercise reasonable inspection likely to disclose the menace and neglect to make removal thereof.") (quotation marks and citation omitted).

In modern cases, the failure to properly inspect is most often framed as one involving constructive notice. When a premises possessor fails to inspect his or her property, or conducts an inadequate inspection, the law will impute knowledge of the dangerous condition to the premises possessor if the dangerous condition is of such a character or has existed for a sufficient time that a reasonable premises possessor would have discovered it. See *Clark v Kmart Corp*, 465 Mich 416, 419-421; 634 NW2d 347 (2001), citing *Serinto v Borman Food Stores*, 380 Mich 637, 640-641; 158 NW2d 485 (1968), and *Hulett*, 299 Mich at 68. Stated another way, a premises possessor cannot avoid liability for the harms caused by a dangerous condition on his or her property by claiming ignorance of its existence if in the exercise of reasonable care the premises possessor should have discovered it.

While seeking summary disposition, Garascia presented evidence that he did not have actual knowledge that the bricks in the steps had become loose. However, as the moving party, Garascia also had to establish that it was beyond genuine factual dispute that he lacked constructive notice of the defective condition. See MCR 2.116(G)(4) (stating that the moving party has the initial burden to identify the issues about which it believes there are no genuine issues of material fact for

---

[1] It is curious that this duty could be referred to by the dissent as novel, given its long and venerable pedigree.

trial); *Stitt*, 462 Mich at 597 (stating that notice—actual or constructive—is an element of a premises liability claim).

With regard to whether he had constructive notice, Garascia argued in his motion that "[n]o liability could be found" for the defective stairs because, if "the defect was visible and should have been known" to him, "it was . . . visible to [Grandberry-Lovette], as well, and therefore open and obvious." That is, he essentially argued that his duty to inspect his premises was coextensive with Grandberry-Lovette's personal duty to take reasonable steps to avoid open and obvious hazards. Therefore, he maintained, in the absence of evidence that the step's dangerous condition was latent and that he created the condition or that someone told him about it, he would never have a duty to repair the defective steps; either he had no duty because the hazard was so readily observable that he had the right to expect his invitees to avoid it or he had no duty because the hazard was so latent that he could not have had notice of its existence before the incident at issue. Garascia's understanding of constructive notice arising from the duty to inspect, however, is not an accurate statement of Michigan's common law.

A premises possessor has no duty to rectify dangerous conditions that are " 'so obvious that the invitee might reasonably be expected to discover them . . . .' " *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516; 629 NW2d 384 (2001), quoting *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992). Accordingly, the open and obvious danger doctrine will " 'cut off liability if the invitee should have discovered the condition and realized its danger.' " *Lugo*, 464 Mich at 516, quoting *Bertrand v Alan Ford, Inc*, 449 Mich 606, 611; 537 NW2d 185 (1995). A dangerous condition is

open and obvious if "an average user with ordinary intelligence" acting under the same conditions would "have been able to discover the danger and the risk presented" by the condition "upon casual inspection." *Novotney v Burger King Corp (On Remand)*, 198 Mich App 470, 475; 499 NW2d 379 (1993). The duty imposed on invitees to protect themselves while visiting another's property is quite limited: the invitee need only keep a "casual" lookout for dangers that are "obvious." See 2 Restatement Torts, 2d, § 343A, comment 1(*b*), p 219 (" 'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."). Even in ordinary speech, the term "casual"—as applied to an invitee's duty to be aware of his or her surroundings—plainly refers to an informal or haphazard observation or inspection; an invitee does not have a duty to be constantly and vigilantly scanning the premises possessor's land for latent dangers. See, e.g., *The Oxford English Dictionary* (2d ed, 1991) (defining the adjective "casual" to mean "[o]ccurring or brought about without design or premeditation; coming up or presenting itself 'as it chances' "); *The American Heritage Dictionary of the English Language* (1985) (defining "casual" to mean "Occurring by chance," "not planned," "Without ceremony or formality," "Not serious or thorough; superficial").

The premises possessor's duty to inspect, in contrast, is not invariably limited to "casual" observation.[2] As

---

[2] We are cognizant of only one published authority that has characterized a premises possessor's duty to inspect as a "casual" duty. See *Raatikka v Jones*, 81 Mich App 428, 431; 265 NW2d 360 (1978). That case, however, involved the statutory duty imposed under the Michigan housing law rather than the common law. And, to the extent that the opinion can be read as stating the duty imposed under our common law,

our Supreme Court has explained, a premises possessor has a duty "to be reasonably sure" that he or she "is not inviting" his or her invitees "into danger, and to that end he [or she] must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Torma v Montgomery Ward & Co*, 336 Mich 468, 476-477; 58 NW2d 149 (1953) (quotation marks and citations omitted). A premises possessor must take "reasonable care to know the actual conditions of the premises . . . ." *Kroll v Katz*, 374 Mich 364, 373; 132 NW2d 27 (1965) (quotation marks and citation omitted); see also *Conerly v Liptzen*, 41 Mich App 238, 241; 199 NW2d 833 (1972) (stating that a premises possessor has a duty to "inspect the premises to discover possible dangerous conditions of which he does not know") (quotation marks and citation omitted). The duty to take reasonable care to know the actual condition of the premises requires the premises possessor to undertake the type of inspection that a "reasonably prudent" premises possessor would exercise under similar circumstances to protect his or her invitees. See *Keech v Clements*, 303 Mich 69, 73; 5 NW2d 570 (1942); *Oppenheim v Pitcairn*, 293 Mich 475, 477-478; 292 NW 374 (1940) (stating that negligence may arise from the premises possessor's "faulty supervision over the premises" such as where a dangerous condition existed for sufficient time "that knowledge of the menace should have come to the reasonably prudent incumbent"); *Hall v Murdock*, 119 Mich 389, 394; 78 NW 329 (1899) (stating that the trial court erred by instructing the jury that the owner had a duty to test the strength of the elevator's cable from "time to time"—as opposed to "inspection and examination"—because there was no

we decline to follow it as unpersuasive and contrary to long-standing and binding Supreme Court precedent. See MCR 7.215(J)(1).

evidence that "such or any other kinds of tests of the strength of elevator cables are common"); see also 2 Restatement Torts, 2d, § 343, comment *e*, p 217 (noting that the extent of preparation that the premises possessor must make depends on the nature of the land and the purposes for which it is used). Moreover, whether the premises possessor should have discovered the dangerous condition with a proper inspection will often be a question of fact for the jury. *Kroll*, 374 Mich at 371-372; *Torma*, 336 Mich at 477; see also *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977) (stating that whether a defendant's conduct in the particular case fell below the general standard of care will generally be a question of fact for the jury). Consequently, for purposes of summary disposition, a premises possessor cannot invariably establish that he or she did not have constructive notice of a dangerous condition by showing that the dangerous condition would not have been discovered during a casual inspection; rather, the premises possessor must show that the type of inspection that a reasonably prudent premises possessor would have undertaken under the same circumstances would not have revealed the dangerous condition at issue. *Kroll*, 374 Mich at 373 (stating that there is no liability for a dangerous condition about which a premises possessor did not know "and could not have discovered with reasonable care") (quotation marks and citation omitted). Accordingly, if under the totality of the circumstances a reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury from finding that the premises possessor should have discovered the hazard in the exercise of reasonable care notwithstanding its latent character.

With these factors in mind, we shall now examine whether Garascia established that there was no material factual dispute concerning whether he had constructive notice that the bricks at issue had become dangerously loose.

### C. SUMMARY DISPOSITION

In his motion for summary disposition, Garascia presented evidence that he did not have actual knowledge that the stairs had fallen into disrepair; specifically, he presented evidence that, if believed, would show that he did not create the defective condition and that no one informed him of the dangerous condition before Grandberry-Lovette's fall.

With regard to constructive notice, Garascia presented evidence that Grandberry-Lovette did not notice that the bricks at issue had become loose. He then argued that this was evidence that he too would not have discovered the danger had he done an inspection. He did not discuss or present any evidence concerning his actual inspection regime and whether that regime would have revealed the dangerous condition. He also did not discuss or present any evidence that the hazard might have developed within such a short time that, even with a reasonable inspection regime, he would not have discovered that the bricks had come loose. He essentially relied on Grandberry-Lovette's inability to discover the hazard on casual inspection to establish that he too, as a reasonably prudent premises possessor, would not have discovered that the bricks had come loose. This evidence, even if left unrebutted, was insufficient to establish that a reasonably prudent premises possessor would not have discovered the step's condition.

As the moving party, Garascia had the initial burden to support his motion with affidavits, depositions, admissions, or other documentary evidence in support of the grounds asserted. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); MCR 2.116(G)(3); MCR 2.116(G)(4).[3] Accordingly, he had the burden to demonstrate that the undisputed facts showed that he did not have constructive notice of the defect at issue; this in turn entailed presenting evidence that a reasonably prudent premises possessor operating under similar circumstances would not have discovered that the bricks had come loose. See *Kroll*, 374 Mich at 373. This he did not do. Because he failed to properly support his motion, the burden to come forward with evidence to establish a question of fact on this issue did not shift to Grandberry-Lovette and the trial court should have denied Garascia's motion on that basis alone. *Barnard Mfg*, 285 Mich App at 370. Nevertheless, even considering the merits of this claim, there was evidence that, if believed, would support a finding that Garascia had constructive notice.

Garascia testified that he had years of experience as a builder and had performed work as a bricklayer. He also testified that the brickwork on the steps at issue had in the past deteriorated and come loose. This, he explained, was normal in Michigan because the freeze-thaw cycle causes brickwork to deteriorate and come loose: "It happens to everybody." Indeed, he repaired

---

[3] The party bringing a motion under MCR 2.116(C)(10) must identify the issues that he or she believes are not in dispute, MCR 2.116(G)(4), and must support that contention with evidence, MCR 2.116(G)(3). A defendant may not support a motion under MCR 2.116(C)(10) by merely asserting his or her belief that the plaintiff will ultimately be unable to establish an element at trial. In such a situation, the nonmoving party has no obligation to respond and the trial court should deny the motion. *Barnard Mfg*, 285 Mich App at 370.

the brickwork approximately 9 to 18 months before Grandberry-Lovette's fall. After he performed that repair, he noted that the remaining brickwork was "in satisfactory condition." Although he acknowledged that the only way to be certain that the bricks were not loose was to "wiggle them," he nevertheless came to the conclusion that the bricks were not loose after doing nothing more than visually inspecting for cracks. Garascia also testified that, even with a properly performed repair, it is possible for brickwork to become loose after 9 to 18 months. Finally, he testified that the last time he was on the property before Grandberry-Lovette's fall was December 2009. When asked whether he inspected the steps during or after the winter before her fall, he agreed that he had not. This testimony was sufficient to permit a reasonable fact-finder to conclude that Garascia would have discovered the loose bricks in the exercise of reasonable care either at the time of the previous repair or through a proper inspection at a later time.

Garascia acknowledged that he knew that brickwork deteriorated under Michigan's freeze-thaw cycle and that the only way to ensure that the bricks were secure was to physically inspect them. Despite this, when he repaired several loose bricks 9 to 18 months before Grandberry-Lovette fell, he did not physically inspect the remaining bricks; instead, he only performed a visual inspection. Given the evidence that several bricks had already come loose approximately 9 to 18 months before the fall at issue and that it is normal for brickwork to deteriorate gradually over a span of freeze-thaw cycles (that is, during the winter months— the very time that Garascia typically did not visit the property), a reasonable jury could find that the bricks at issue were already loose at that time of the repair, or in the process of coming loose. It could also find that a

reasonably prudent premises possessor in Garascia's position would have physically inspected the brickwork on the steps and discovered the deterioration.

Even assuming that the steps were in satisfactory condition after Garascia's repair, there was evidence from which a reasonable jury could conclude that the bricks at issue must have come loose over the winter before Grandberry-Lovette's fall and could have been discovered during a physical inspection. Garascia testified that even a properly performed repair can deteriorate over 9 to 18 months and that the "normal" cause of deterioration is the freeze-thaw cycle. Although he also stated that breaking ice and applying salt can contribute to the loosening of bricks, those activities are routine during Michigan winters. Hence, a jury could find that a reasonably prudent premises possessor would understand that—in addition to the deterioration caused by the freeze-thaw cycle in a typical Michigan winter—the premises possessor's lessees might further cause deterioration by applying salt and breaking ice. It follows that the jury might find that a reasonably prudent premises possessor would for that reason physically inspect the brickwork during and after every winter. Moreover, Grandberry-Lovette testified that the bricks "crumbled" when she stepped on them. The fact that the bricks crumbled suggests that the mortar had deteriorated from exposure to the freeze-thaw cycle. Accordingly, a reasonable jury could find that the deteriorated condition of the brickwork occurred over time and could for that reason have been discovered long before Grandberry-Lovette's fall. Because Garascia testified that he did not inspect the brickwork during the winter months or in the spring immediately before Grandberry-Lovette's fall, a reasonable jury could find that he breached his duty by failing to inspect the brickwork after the period when it was

most likely to develop flaws and that, had he done so, he would have discovered that the bricks had deteriorated and were in danger of coming loose. Consequently, on this record, there was sufficient evidence to create a question of fact regarding whether Garascia had constructive notice of the defective steps.[4]

### III. CONCLUSION

The trial court erred when it determined that the undisputed evidence showed that Garascia did not have actual or constructive notice that the steps at issue were defective. Because Garascia failed to present evidence that a reasonably prudent premises possessor operating under the same conditions as Garascia would not have discovered the dangerous character of the steps, Grandberry-Lovette did not have the burden to come forward with evidence to establish a question of fact on that issue and the trial court should have denied Garascia's motion on that basis. In any event, as Grandberry-Lovette showed in her response to Garascia's motion, given Garascia's testimony, there was at least a question of fact regarding whether he would have discovered the danger posed by the steps with a reasonable and timely inspection. Therefore, the trial court erred when it granted summary disposition in Garascia's favor on the ground that the undisputed facts showed that he did not have constructive notice of the defect.

---

[4] To the extent that Garascia's assertion that he lacked constructive knowledge of the defective condition is belied by his own testimony regarding the state of the brickwork and the freeze-thaw cycle, we note that the trial court was required to consider all admissible evidence then filed in the action, and not merely that evidence tending to support Garascia's position. *Barnard Mfg*, 285 Mich App at 377, quoting MCR 2.116(G)(5) ("Accordingly, if a party refers to and relies on an affidavit, pleading, deposition, admission, or other documentary evidence, and that evidence is 'then filed in the action or submitted by the parties,' the trial court must consider it.").

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Grandberry-Lovette may tax her costs. MCR 7.219(A).

JANSEN, P.J., concurred with M. J. KELLY, J.

O'CONNELL, J. (*dissenting*). I respectfully dissent. The majority invents a novel duty that requires premises possessors to predict when and whether Michigan weather might cause decorative bricks to loosen. I am unconvinced that Michigan law requires any premises possessor to be meteorologically clairvoyant about masonry. In my view, the majority opinion creates a new doctrine of anticipatory notice, which has never been recognized in Michigan. I decline to apply this new doctrine. Instead, I accept the trial court's application of the well-recognized doctrine of constructive notice, and I would affirm the grant of summary disposition in favor of defendant.

Plaintiff argues, and the majority holds, that there is a genuine issue of material fact regarding whether defendant had notice of any wobbling in the decorative brick on the porch steps. I find no factual issue. Premises possessors may be liable for injuries that result from a dangerous condition on their premises if they have actual notice of the condition or if the condition is of such a kind or sort that the law ascribes constructive notice of the condition to the premises possessor. See, generally, *Clark v Kmart Corp*, 465 Mich 416, 419; 634 NW2d 347 (2001). A premises possessor has constructive notice of a dangerous condition if the condition is "of such a character or has existed a sufficient length of time that he

should have had knowledge of it." *Id.* (quotation marks and citations omitted).[1]

The record contains nothing to create a factual issue about constructive notice. Although the record indicates that defendant had repaired the steps once, there is no indication that the bricks routinely became loose. Plaintiff argues that because defendant once repaired part of the steps, defendant forever had constructive notice that any part of the steps could be defective. However, plaintiff presented no evidence to establish that defendant was aware of a defect in any part of the steps at the time of plaintiff's fall. I cannot find that defendant's prior repair of the steps gave him constructive notice that a future defect might occur. Nor can I find that the prior repair created a continual duty to scrutinize the steps.[2] Thus, I conclude that no genuine issue of material fact existed regarding whether defendant had constructive notice of the alleged defect. Consequently, summary disposition for defendant was proper under MCR 2.116(C)(10), and I would affirm the trial court's decision.

---

[1] Plaintiff asserts that a question of fact existed regarding whether defendant had actual notice of the defect in the steps because he previously repaired another section of the steps and, therefore, knew of the bricks' propensity to break free from the concrete steps. However, general knowledge that bricks may become loose does not constitute actual notice of the condition that caused plaintiff's fall. See, generally, *Altairi v Alhaj*, 235 Mich App 626, 640; 599 NW2d 537 (1999). Thus, the evidence, even when viewed in the light most favorable to plaintiff, did not create a genuine issue of material fact with regard to whether defendant had actual notice of the alleged defect in the steps.

[2] The majority's new duty requires defendant to prove a negative, i.e., that an inspection by a reasonably prudent premises possessor "would *not* have revealed the dangerous condition at issue." *Ante* at 579 (emphasis added). If, as the majority seems to suggest, a wobbly brick is not apparent from a visual inspection, I cannot see how premises possessors could possibly prove that they fulfilled the new duty.