# STATE OF MICHIGAN

# COURT OF APPEALS

ALISON CANCILLIARI,

      Plaintiff/Counter-Defendant-
      Appellant,

v

SUMMIT ACADEMY NORTH,

      Defendant/Counter-Plaintiff-
      Appellee,

and

BOARD OF DIRECTORS OF SUMMIT
ACADEMY NORTH, TIM ABEN, JENNIFER
DALE, and SUSAN MOZENA,

      Defendants-Appellees.

UNPUBLISHED
May 12, 2016

No. 325389
Wayne Circuit Court
LC No. 13-004016-CK

Before: BOONSTRA, P.J., and METER and BECKERING, JJ.

PER CURIAM.

Plaintiff appeals as of right, challenging the trial court's order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10). We affirm.

Non-party Summit Academy (SA) and defendant Summit Academy North (SAN) are public school academies, also known as charter schools, operated pursuant to MCL 380.501 *et seq.* SA and SAN are separate entities with separate boards of directors. Central Michigan University (CMU) is the authorizing body that issued SA's and SAN's charters to operate the schools in accordance with MCL 380.501(2)(a)(*iv*) and (d), and MCL 380.502. CMU, through its Center for Charter Schools, implemented policies governing SA's and SAN's contractual agreements with Education Service Providers (ESPs), defined as providers "that manage[] or operate[] an academy or provide[] administrative, managerial or instructional staff to the academy." The ESP policies prohibit Academy board members, employees, and their respective spouses or immediate family members from holding employment, contractual, or management interests in any ESP that contracts with the Academies, unless otherwise authorized by CMU. Helicon Associates was the ESP that provided management services to SA and SAN. From 2004

-1-

to 2007, plaintiff performed consulting services for Helicon and received compensation from that company.

Before September 2008, plaintiff was employed by SA, although her duties were divided between SA and SAN. In March 2008, CMU detected "related party transactions" between SA and two companies, Emma Street and Success Educational Services, in which plaintiff or her husband received compensation or held an ownership interest. CMU directed plaintiff to make full disclosure of all involvement with the Academies' vendors. Plaintiff disclosed that her husband held a 50 percent ownership interest in Emma Street and Success Educational Services, but she denied that any vendor funds were distributed to her. Plaintiff did not disclose any relationship with Helicon.

In September 2008, the SAN board executed an employment contract with plaintiff in which SAN and SA shared her services on a 75/25 percent basis, respectively. Plaintiff maintains that the board members knew that she had previously received compensation from Helicon for consulting services before she entered into the 2008 employment agreement. Plaintiff also contends that she ceased her consulting work for Helicon as a condition of accepting the 2008 employment agreement. The employment agreement provided that plaintiff's employment would not be terminated except for just cause, and not for arbitrary or capricious reasons.

In March 2012, a former SAN employee provided CMU with information regarding financial improprieties between plaintiff and Helicon. This information led CMU to issue Notices to Revoke SA's and SAN's charters. SAN retained the Dickinson Wright law firm to conduct an internal review of the allegations concerning conflict of interest and misappropriation of Academy funds. Dickinson Wright retained an accounting firm, Plante Moran, L.L.C., to conduct a forensic examination of financial records. Plante Moran reported that it found "numerous payments made by Helicon to [plaintiff], as well as to Dolphin Properties, a company owned by Plaintiff's husband, Dino Cancilliari, which contracted with and provided services to the Academies." The total amount of these payments was substantial.

According to defendants, board members friendly to plaintiff were unwilling to terminate her employment. CMU replaced them with the individual defendants, who subsequently approved plaintiff's termination. Plaintiff brought the instant action against defendants for breach of contract and related claims. The trial court determined that plaintiff failed to establish a genuine issue of material fact that defendants lacked just cause to terminate her employment, and accordingly, it granted summary disposition to defendants.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Grandberry-Lovette v Garascia*, 303 Mich App 566, 572; 844 NW2d 178 (2014). Motions for summary disposition under MCR 2.116(C)(10) test the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). The trial court "must consider the affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Id*. Summary disposition is appropriate if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. *Id*.

Parties entering into a contract for employment may expressly agree that the employee will not be terminated absent just cause. See *Bracco v Mich Technological Univ*, 231 Mich App 578, 587; 588 NW2d 467 (1998). In *Toussaint v Blue Cross & Blue Shield of Mich*, 408 Mich 579, 621-624; 292 NW2d 880 (1980), the Michigan Supreme Court stated:

> We all agree that where an employer has agreed to discharge an employee for cause only, its declaration that the employee was discharged for unsatisfactory work is subject to judicial review. The jury as trier of facts decides whether the employee was, in fact, discharged for unsatisfactory work. A promise to terminate employment for cause only would be illusory if the employer were permitted to be the sole judge and final arbiter of the propriety of the discharge. There must be some review of the employer's decision if the cause contract is to be distinguished from the satisfaction contract.

> The role of the jury will differ with each case. Where the employer claims that the employee was discharged for specific misconduct—intoxication, dishonesty, insubordination—and the employee claims that he did not commit the misconduct alleged, the question is one of fact for the jury: did the employee do what the employer said he did?

> Where the employer alleges that the employee was discharged for one reason—excessive tardiness—and the employee presents evidence that he was really discharged for another reason—because he was making too much money in commissions—the question also is one of fact for the jury. The jury is always permitted to determine the employer's true reason for discharging the employee.

> Where an employee is discharged for stated reasons which he contends are not "good cause" for discharge, the role of the jury is more difficult to resolve. If the jury is permitted to decide whether there was good cause for discharge, there is the danger that it will substitute its judgment for the employer's. If the jurors would not have fired the employee for doing what he admittedly did, or they find he did, the employer may be held liable in damages although the employee was discharged in good faith and the employer's decision was not unreasonable.

> While the promise to terminate employment only for cause includes the right to have the employer's decision reviewed, it does not include a right to be discharged only with the concurrence of the communal judgment of the jury.

> \* \* \*

> An employer who agrees to discharge only for cause need not lower its standard of performance. It has promised employment only so long as the employee does the job required by the employment contract. The employer's standard of job performance can be made part of the contract. Breach of the employer's uniformly applied rules is a breach of the contract and cause for discharge. In such a case, the question for the jury is whether the employer

-3-

actually had a rule or policy and whether the employee was discharged for violating it. [Citations omitted.]

Plaintiff contends that she is entitled to have a jury decide whether just cause existed for her termination. However, to avoid summary disposition under MCR 2.116(C)(10), plaintiff was required to establish the existence of a *genuine issue of material fact* regarding just cause. There was no genuine issue of material fact that defendants' termination decision was based on plaintiff's contractual relationship with Helicon and the resulting conflict of interest. Defendants do not contend that plaintiff's work performance was unsatisfactory in any other respect. Plaintiff does not deny her relationship with Helicon, nor does she claim that the conflict of interest was a pretext for some other reason. The gravamen of plaintiff's argument is that the Helicon relationship was a legally invalid reason to terminate her employment. Indeed, plaintiff advances three reasons why her relationship with Helicon could not be a valid basis for terminating her employment: (1) she ceased to receive compensation from Helicon at the time she entered into the September 8, 2008, employment agreement; (2) her association with Helicon was contemporaneous only with her employment by non-party SA, which is a distinct entity from SAN; and (3) the SAN board members knew of her association with Helicon, but did not regard it an impediment to her employment once it ended. We conclude that plaintiff's arguments simply do not establish a question of fact.

Plaintiff emphasizes that defendant SAN is a distinct entity from SA. She argues that her association with Helicon contemporaneously with her employment with SA, and before the execution of her contract with SAN, could not have any relevance to defendants' reasons for terminating her employment. However, SA's and SAN's status as distinct entities clearly did not preclude SAN from taking into consideration misconduct related to plaintiff's employment with SA. The employment contract executed September 8, 2008, stated, "It is understood and agreed that the Program Director is to be 'shared' with Summit Academy on a 75/25 basis with 75% of her time directed to Summit Academy North and 25% of her time to Summit Academy." CMU issued the Notice of Intent to Revoke Charter to both SA and SAN, and its notice to SAN cites violations of the ESP requirements, which pertain to both schools. Requests for information from CMU in March 2008 pertained to "Summit Academies," plural. Plaintiff's conduct affected both SA and SAN. In view of plaintiff's close association with both academies, SAN clearly was not required to disregard plaintiff's history at SA.

Plaintiff's complaint stated a separate count for "Equitable Estoppel," but "[e]quitable estoppel is not an independent cause of action, but rather a doctrine that may assist a party by preventing the opposing party from asserting or denying the existence of a particular fact." *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 309-310; 583 NW2d 548 (1998). "[E]quitable estoppel . . . is available as protection from a defense raised by the defendant. It is not available to the plaintiff in stating a cause of action." *Charter Twp of Harrison v Calisi*, 121 Mich App 777, 787; 329 NW2d 488 (1982). "[E]quitable estoppel may arise where (1) a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, (2) the other party justifiably relies and acts on that belief, and (3) the other party is prejudiced if the first party is allowed to deny the existence of those facts." *West American Ins*, 230 Mich App at 310. Plaintiff contends that defendants cannot deny the "fact" that her relationship with Helicon was not just cause for terminating her employment because it

implicitly represented to her in September 2008 that her past association with Helicon would not prevent her employment as SAN's program director.

Plaintiff's attempt to assert equitable estoppel in this fashion is misplaced for multiple reasons. Plaintiff averred in her affidavit that the SAN Board advised her that she would have to cease her consulting relationship with Helicon and thereby implied that her past relationship with Helicon was not a barrier to employment. However, defendants produced evidence that Plante Moran determined that payments plaintiff received from Helicon were substantially higher than board members had been aware. Plante Moran also determined that plaintiff's compensation from Helicon pertained to services performed on behalf of SA and SAN. Plaintiff also failed to fully disclose her association with Helicon in March 2008, when CMU and the Academies' attorneys specifically requested full disclosure and emphasized the importance of doing so. Given this evidence, plaintiff cannot establish a question of fact that defendants induced her to believe that her association with Helicon was not a barrier to employment, because plaintiff had more information than the board members. Moreover, plaintiff knew that the board was subject to the contract with CMU, including the ESP policies. She could not have reasonably believed any representations by the board that were in violation of CMU's policies.

Defendants characterize plaintiff's legal argument as based on a theory of waiver, specifically, that defendants waived their right to terminate her employment based on her association with Helicon. "Waiver is the intentional relinquishment of a known right." *Adair v State of Michigan*, 497 Mich 89, 104; 860 NW2d 93 (2014) (citations and quotation marks omitted). "A waiver exists only where one, with full knowledge of material facts, does or forbears to do something inconsistent with the existence of the right in question or his intention to rely on that right." *Fitzgerald v Hubert Herman, Inc*, 23 Mich App 716; 718; 179 NW2d 252 (1970) (citation and quotation marks omitted). Plaintiff failed to show that defendants had "full knowledge of material facts." Plaintiff offered evidence that voting members of the SAN board knew that she previously received compensation from Helicon, but this evidence did not establish a question of fact that defendants had *full* knowledge of the amount of compensation or the relation of this compensation for services Helicon performed for SA or SAN.

Plaintiff argues that the board members' incomplete knowledge of her dealings with Helicon does not negate her estoppel and waiver theories because defendants must "bear the risk of [their] mistake." She contends that the board members were aware that they had limited knowledge, but "treat[ed] this knowledge as sufficient" when they entered into the contract. Plaintiff relies on 1 Restatement Contracts, 2d, §§ 153 and 154. Section 154 states:

> A party bears the risk of a mistake when
>
> (a) the risk is allocated to him by agreement of the parties, or
>
> (b) he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or

(c) the risk is allocated to him by the court on the ground that it is reasonable in the circumstances to do so. [1 Restatement Contracts, 2d, § 154, pp 402-403.]

Section 153 states:

Where a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if he does not bear the risk of the mistake under the rule stated in § 154, and

(a) the effect of the mistake is such that enforcement of the contract would be unconscionable, or

(b) the other party had reason to know of the mistake or his fault caused the mistake. [1 Restatement Contracts, 2d, § 153, p 394.]

These provisions are not relevant to plaintiff's breach of contract claim. Defendants are not currently arguing that the 2008 employment agreement is voidable and are not attempting to "nullify" the agreement but instead wish to terminate plaintiff's employment going forward. By relying on the rules addressing allocation of risk of mistake, plaintiff is merely presenting another iteration of her equitable estoppel argument. In any event, evidence does not establish that the board members were aware that they had "limited knowledge" concerning plaintiff's association with Helicon.

In sum, plaintiff's legal theories fail to establish that defendants lacked just cause to terminate her employment.

Plaintiff argues that she is entitled to reimbursement for expenses in defending SAN's counterclaims pursuant to the indemnification provision in her employment contract. This provision requires the board to

provide public liability insurance for the Program Director to cover legal expenses in defense of claims and payment of judgments resulting from her functioning as Program Director and will reimburse her for any portion of such expense and judgments not covered by insurance.

The provision states that the board

shall defend, hold harmless and indemnify Program Director from any and all demands, claims, suits, actions and legal proceedings brought against Program Director in her individual capacity, or in her official capacity as agent and employee of the Academy, provided the incident arose while Program Director was acting within the scope of her employment for this Academy and excluding criminal litigations.

"Issues regarding the proper interpretation of a contract or the legal effect of a contractual clause are reviewed de novo." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684,

694; 818 NW2d 410 (2012). "When interpreting a contract, the examining court must ascertain the intent of the parties by evaluating the language of the contract in accordance with its plain and ordinary meaning." *Id*. The employment agreement limits reimbursement to claims arising from incidents within the scope of plaintiff's employment. Plaintiff was not acting within the scope of her employment when she concealed the extent of her involvement with Helicon. Accordingly, she was not entitled to indemnification.

Plaintiff argues that defendants made two actionable misrepresentations: (1) representing to her that her performance would be evaluated in accordance with the procedure set forth in her employment agreement, and (2) representing that she would be discharged only for just cause.

The elements of fraudulent misrepresentation are:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*Bergen v Baker,* 264 Mich App 376, 382; 691 NW2d 770 (2004) (citations and quotation marks omitted).]

Generally, a fraud claim must arise from a statement relating to a past or existing fact; therefore, a promise relating to a future action is usually considered contractual and does not constitute fraud. *Hi–Way Motor Co v Int'l Harvester Co*, 398 Mich 330, 336; 247 NW2d 813 (1976). However, when "a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon," a claim for fraud in the inducement may be stated. *Custom Data Solutions, Inc v Preferred Capital, Inc*, 274 Mich App 239, 242-243; 733 NW2d 102 (2006) (citation and quotation marks omitted).

As discussed earlier, plaintiff's evidence that board members had some knowledge of her dealings with Helicon did not establish that they knew the full extent of her compensation from Helicon. Additionally, whatever knowledge the board members had could not relieve SAN of its obligations to comply with the ESP policies incorporated into the charter issued by CMU. Plaintiff's argument that defendants misrepresented that they would not terminate employment except for just cause is clearly without merit. With respect to the alleged misrepresentation concerning the evaluation provisions in the contract, plaintiff was not terminated for a performance issue, but for concealing the extent of her relationship with Helicon. Accordingly, the performance evaluation procedure in the contract was not triggered, and there is no evidence that defendants did not intend to comply with the procedure when the contract was executed.

Although plaintiff asserts in her statement of questions presented in her brief that the trial court erred in denying her motion for reconsideration, she fails to argue this issue in the body of her brief. "It is not sufficient for a party simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position." *In re Mich Consol Gas Co's Compliance with 2008 PA 286 & 295*, 294 Mich App 119, 139; 818 NW2d 354 (2011) (citations and quotation marks omitted). "Failure to brief a

question on appeal is tantamount to abandoning it." *Id*. (citation and quotation marks omitted). Accordingly, this issue is abandoned.

In any event, the record discloses that plaintiff's motion for reconsideration failed to "demonstrate a palpable error by which the court and the parties have been misled." MCR 2.119(F)(3). Accordingly, the trial court did not abuse its discretion in denying the motion. *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).

Affirmed.

/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Jane M. Beckering