# STATE OF MICHIGAN

# COURT OF APPEALS

KRYSTAL LOWREY,

Plaintiff-Appellant,

v

LMPS & LMPJ, INC.,

Defendant,

and

KSK HOSPITALITY GROUP, INC., d/b/a
WOODY'S DINER,

Defendant-Appellee.

FOR PUBLICATION
December 10, 2015
9:00 a.m.

No. 323049
Oakland Circuit Court
LC No. 2013-134588-NO

Before: RONAYNE KRAUSE, P.J., and MARKEY and M. J. KELLY, JJ.

M. J. KELLY, J.

In this suit involving a slip and fall, plaintiff, Krystal Lowrey, appeals by right the trial court's order dismissing her claim against defendant, KSK Hospitality Group, Inc. (KSK), which does business as Woody's Diner (the bar). On appeal, we must determine whether the trial court erred when it granted KSK's motion for summary disposition under MCR 2.116(C)(10). We conclude that it did. In its motion, KSK failed to present evidence that, if left unrebutted, would establish that it did not have actual or constructive notice of the condition; as such, Lowrey had no obligation to come forward with evidence establishing a question of fact as to that element, and the trial court should have denied the motion. We also conclude that the other bases for dismissal raised in KSK's motion are without merit. Accordingly, we reverse and remand.

## I. BASIC FACTS

Lowrey testified at her deposition that she and four friends, including Kelly Dobronski and Samantha Bevins, went to the bar at about 12:30 a.m. on March 17, 2013. After checking their coats, they went upstairs to the dance area.

Bevins testified at her deposition that the stairs were close to the door where guests go outside to smoke. Two or three times during their visit, Bevins said, they went downstairs for a smoke break. At the time, it was snowing and there was snow on the ground. Bevins said that the bar was busy and there was "a lot of traffic" from people going in and out. Dobronski

-1-

similarly testified at her deposition that it began to snow after they arrived and was snowing "really bad." Bevins said she saw "girls that were wearing like flat shoes . . . sliding" on the steps. She was not sure if all the steps after the landing were wet because "it's darker, you can't see as good, and I didn't inspect the stairs, I'm there to have fun, not to look for safety hazards." Nevertheless, she testified that the steps "were very wet" from the smokers tracking snow inside. There was even some salt on the steps that got tracked in from outside.

Lowrey testified that she and her friends descended the same steps on their way to leave. She could not see clearly because there were "a lot of people like walking down the stairs . . . ." Dobronski also testified that there were a lot of people going down the steps. The steps were narrow; there was enough room for two people to descend side-by-side, but they would be in trouble if somebody were coming up the stairs. After Lowrey had descended about three-quarters of the way down, she suddenly slipped, lost her balance, and fell. She tried to get up, but she couldn't walk; it was later learned that she had broken her tibia and fibula.

Lowrey said a bouncer ordered them to "get out." Bevins similarly stated that there was a bouncer at the bottom of the steps who witnessed the fall; she agreed that that he was controlling traffic coming down the stairs. The bouncer was "rushing" them to get out. Lowrey's friends eventually got her out of the bar without any help from the bouncers.

In June 2013, Lowrey sued LMPS & LMPJ, Inc. for damages arising from her slip and fall. She amended her complaint to name KSK in July 2013.

KSK moved for summary disposition in May 2014. It argued that Lowrey's claim should be dismissed because Lowrey could not identify what caused her fall and could not prove that KSK had actual or constructive notice of any dangerous condition that may have existed. It also argued that, if there were a dangerous condition, it had no duty to rectify it or warn her because the condition was open and obvious. The trial court agreed that Lowrey failed "to present any evidence that [KSK] had actual or constructive notice" of the conditions of the stairs prior to Lowrey's fall and granted KSK's motion. It also stated, in passing, that it was dismissing Lowrey's claims for the reasons "further stated" by KSK in its brief. The trial court entered an order dismissing Lowrey's claim under MCR 2.116(C)(10) for the reasons stated on the record in July 2014. After the trial court denied her motion for reconsideration, Lowrey appealed.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

Lowrey argues that the trial court erred when it granted KSK's motion for summary disposition. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied the court rules and this state's common law. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

## B. THE BURDEN OF PRODUCTION

In its brief in support of its motion for summary disposition, KSK repeatedly asserted its belief that Lowrey would not be able to support the elements of her claim. Likewise, in granting KSK's motion, the trial court emphasized that Lowrey would have the burden to present evidence that KSK had actual or constructive notice of the dangerous condition if her claim were to proceed to trial and, for that reason, concluded that she had an obligation to present evidence after KSK raised the issue in its motion. The trial court appears to have understood that a defendant meets his or her burden of production as the moving party by simply stating a belief that the plaintiff will be unable to present evidence to establish an element at trial. This understanding is not, however, in accord with our court rules.

The parties to a civil action generally have the right to have a jury hear the evidence and resolve their dispute. See Const 1963, art 1, § 14. Nevertheless, because the plaintiff bears the burden of proof, if the plaintiff fails to present evidence on an element of his or her claim at trial, the trial court properly directs a verdict in the defendant's favor. See *Taylor v Kent Radiology, PC*, 286 Mich App 490, 499-500; 780 NW2d 900 (2009). Courts should grant a motion for a directed verdict only in those cases where reasonable people could not differ as to whether the plaintiff established the elements of his or her claim; to do otherwise would contravene the constitutional requirement that the right to a jury trial be preserved. *Napier v Jacobs*, 429 Mich 222, 231-232; 414 NW2d 862 (1987). The grant of a motion for summary disposition amounts to—in effect—the grant of a directed verdict in favor of the moving party, and the same standard of review applies to both motions. See *Skinner v Square D Co*, 445 Mich 153, 165 n 9; 516 NW2d 475 (1994). Summary disposition does not violate a party's right to a jury trial because that right extends only to cases where there are genuine issues of fact for the jury. See *People's Wayne County Bank v Wolverine Box Co*, 250 Mich 273, 281; 230 NW 170 (1930). In considering such motions, courts must still remain "cognizant of the delicate balance between the constitutional right to a jury trial, on the one hand, and the proper judicial exercise of the rules of civil procedure, on the other." *Napier*, 429 Mich at 231.

A party may test the opposing party's factual support for a claim or defense by making a properly supported motion for summary disposition under MCR 2.116(C)(10). See *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A trial court should grant the motion if, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). In order to invoke the trial court's authority to dismiss a claim under MCR 2.116(C)(10), the moving party must identify the issues about which there is no genuine issue of material fact and present evidence that, if left unrebutted, would establish the moving party's right to summary disposition. See *Barnard Mfg*, 285 Mich App at 369-370. "If the moving party properly supports its motion, the burden 'then shifts to the opposing party to establish that a genuine issue of disputed fact exists.' " *Id.* at 370, quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the moving party fails to identify with the requisite specificity the "issues as to which the moving party believes there is no genuine issue as to any material fact," MCR 2.116(G)(4), the nonmoving party cannot be faulted for failing to respond, and the trial court should deny the motion. Similarly, if the moving party fails to properly support his or her motion for summary disposition with affidavits, depositions, admissions, or other documentary evidence, the nonmoving party has no obligation to respond and the trial

court should also deny the motion. *Barnard Mfg*, 285 Mich App at 370. It is only after the moving party files a properly *asserted* and *supported* motion for summary disposition that the nonmoving party may no longer "rest upon the mere allegations or denials of his or her pleading, but must, by affidavits or as otherwise provided in this rule, set forth specific facts showing that there is a genuine issue for trial." MCR 2.116(G)(4).

There is a temptation on the part of busy trial courts to conclude that, because the plaintiff bears the initial burden of production *at trial*, the defendant should be able to challenge the plaintiff's ability to support his or her claim by filing a motion for summary disposition under MCR 2.116(C)(10) and asserting the belief that the plaintiff will be unable to meet his or her burden at trial. However, as our court rules clearly provide, it is the moving party—whether the plaintiff or the defendant—who bears the initial burden of production in a motion for summary disposition; the moving party must not only "specifically identify the issues as to which the moving party believes there is no genuine issue as to any material fact," but also must support the motion "as provided in this rule." MCR 2.116(G)(4).

The moving party supports his or her motion by presenting affidavits, depositions, admissions, or other documentary evidence to establish the grounds asserted in the motion. MCR 2.116(G)(3). It is only when the moving party properly supports the motion that the burden shifts to the nonmoving party to present evidence sufficient to establish that there is a genuine issue for trial. *Quinto*, 451 Mich at 362. And, because the burden of production is on the moving party at this point, the moving party risks having his or her motion "thrown out of court" if the moving party fails to properly support it. See *Kar v Hogan*, 399 Mich 529, 540; 251 NW2d 77 (1976) (quotation marks and citation omitted), overruled not in relevant part *In re Estate of Karmey*, 468 Mich 68; 658 NW2d 796 (2003). Consequently, a defendant who moves for summary disposition does not satisfy the initial burden of production by asserting his or her mere belief that the plaintiff will be unable to make his or her case at trial. Rather, the moving party must present evidence that, if left unrebutted, would permit a reasonable finder of fact to find in the moving party's favor on the element at issue. *Barnard Mfg*, 285 Mich App at 370; see also *Grandberry-Lovette v Garascia*, 303 Mich App 566, 580-581; 844 NW2d 178 (2014). Where the defendant is convinced that the plaintiff will be unable to support an element of the claim at trial, but is unwilling or unable to marshal his or her own proofs to support a motion under MCR 2.116(C)(10), the defendant's recourse is to wait for trial and move for a directed verdict after the close of the plaintiff's proofs. See *Napier*, 429 Mich at 229-230.

## C. APPLYING THE LAW: NOTICE

To establish a claim of premises liability,[1] the plaintiff must be able to prove that the premises possessor had actual or constructive notice of the dangerous condition at issue—that is, that the premises possessor either knew about the dangerous condition or would have discovered it had it conducted a reasonable inspection. See *Riddle v McLouth Steel Products*, 440 Mich 85,

---

[1] It is undisputed that Lowrey was an invitee of KSK and that it therefore owed her the highest duty of care, including a duty to inspect its premises for dangerous conditions. *Grandberry-Lovette*, 303 Mich App at 573.

93; 485 NW2d 676 (1992). Because actual or constructive notice is an essential element of Lowrey's claim, if KSK established that there was no question of fact that it did not have actual or constructive notice, it would be entitled to summary disposition. MCR 2.116(C)(10).

## 1. ACTUAL NOTICE

To demonstrate that there was no genuine issue that it did not have actual notice, KSK had to present evidence that, if believed, would establish that it did not know that the stairs were wet or slippery. As an artificial entity, KSK's knowledge consists of the collective knowledge acquired by its employees within the scope of their employment and authority. See *The Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214, 215 n 14; 476 NW2d 392 (1991). For that reason, a premises possessor is considered to have actual notice of those conditions caused by his or her employees or about which his or her employees know. *Hulett v Great Atlantic & Pacific Tea Co*, 299 Mich 59, 67; 299 NW 807 (1941). Therefore, to establish that it did not have actual notice that the steps were wet and slippery, KSK had to present evidence from an employee whose duties included addressing dangerous conditions on the property during the time at issue, as those conditions might arise or become known.

In the present case, KSK relied on evidence from three sources to establish that it did not have actual notice. It cited deposition testimony from the manager on duty on the night at issue, Jenna Evans. She testified that no one made her aware that anyone had fallen on the steps. KSK noted too that its owner, Tony Kasab, did not learn of Lowrey's fall until much later. Finally, KSK relied on testimony tending to establish that Lowrey and her friends did not hear anyone complaining to KSK's employees about the condition of the stairs. None of this testimony was sufficient to allow a reasonable jury to find that KSK did not actually know that the steps were wet and slippery.

Although knowledge that someone had fallen down the stairs at issue would be evidence that Evans or Kasab knew that the stairs might have been wet and slippery, it does not follow from that testimony that no customer or employee reported that the steps were wet and slippery, nor, for that matter, that the employees themselves did not know about the condition of the stairs. Knowledge that a hazard has not yet caused a fall is distinct from knowledge that the hazard exists in the first place. Likewise, the fact that Lowrey and her companions did not hear anyone complain to one of KSK's employees does not establish that no one brought the wet and slippery condition of the stairs to the attention of its employees. It is highly unlikely that Lowrey and her companions were privy to every conversation between every customer and KSK's employees during the time at issue. Because the evidence proffered in support of KSK's motion for summary disposition did not permit an inference that it lacked actual notice of the wet and slippery conditions, KSK failed to properly support its motion on that issue. Consequently, the trial court erred to the extent that it required Lowrey to present evidence to establish a question of fact as to whether KSK had actual notice; instead, it should have denied KSK's motion for lack of evidentiary support. *Barnard Mfg*, 285 Mich App at 370.

## 2. CONSTRUCTIVE NOTICE

A premises possessor owes a duty to inspect his or her premises for conditions that might pose a danger to invitees and this duty is linked to the concept of constructive notice:

> The duty to inspect one's premises to ensure that the premises are safe for invitees is inextricably linked to the concept of constructive notice. Even if the premises possessor does not have actual knowledge of a dangerous condition—as would be the case for a dangerous condition created by some third party or through gradual deterioration—Michigan courts have long recognized that the law will impute knowledge of the dangerous condition to the premises possessor if the premises possessor should have discovered the dangerous condition in the exercise of reasonable care. [*Grandberry-Lovette*, 303 Mich App at 573 (citations omitted).]

Generally, the law "will impute knowledge of the dangerous condition to the premises possessor if the dangerous condition is of such a character or has existed for a sufficient time that a reasonable premises possessor would have discovered it." *Id.* at 575. However, whether the condition was one that a premises possessor would have discovered with a reasonable inspection generally depends in the first instance on the nature of the inspection that a reasonable premises possessor would have made under the circumstances. See *Grandberry-Lovette*, 303 Mich App at 576-584; see also *Gerlach v Detroit United Ry*, 171 Mich 474, 485; 137 NW 256 (1912) (stating that a reasonable inspection includes not only visual inspection, but also all those tests which a reasonably prudent man would ordinarily use to ascertain the condition of the property at issue).

In *Grandberry-Lovette*, the plaintiff was injured while visiting a group home. *Grandberry-Lovette*, 303 Mich App at 570. On appeal, this Court considered whether the trial court properly dismissed the plaintiff's claim against the defendant on the ground that he did not have constructive notice of the dangerous condition. *Id.* at 572.

The Court first explained that the defendant was incorrect when he argued that his duty to inspect for hazards was no different than the plaintiff's duty to avoid hazards that are open and obvious. "The premises possessor's duty to inspect," the Court observed, "is not invariably limited to 'casual' observation." *Id.* at 577. This is so because the "premises possessor must take reasonable care to know the actual conditions" on his or her property. *Id.* at 578 (quotation marks and citation omitted). And what amounts to reasonable care depends on the type of inspection that a reasonably prudent premises possessor would perform under like circumstances: "The duty to take reasonable care to know the actual condition of the premises requires the premises possessor to undertake the type of inspection that a 'reasonably prudent' premises possessor would exercise under similar circumstances to protect his or her invitees." *Id.* (citations omitted). "[I]f under the totality of the circumstances a reasonably prudent premises possessor would have employed a more vigorous inspection regime that would have revealed the dangerous condition, the fact that the condition was not observable on casual inspection would not preclude a jury from finding that the premises possessor should have discovered the hazard in the exercise of reasonable care notwithstanding its latent character." *Id.* at 579.

After rejecting the notion that a premises possessor's duty to inspect was *invariably* the same as an invitee's duty to avoid open and obvious hazards,[2] this Court examined the evidence that the defendant proffered in support of his motion and concluded that he did not properly support it; specifically, the Court determined that he failed to offer any evidence as to what would constitute a reasonable inspection under like circumstances:

> He did not discuss or present any evidence concerning his actual inspection regime and whether that regime would have revealed the dangerous condition. He also did not discuss or present any evidence that the hazard might have developed within such a short time that, even with a reasonable inspection regime, he would not have discovered that the bricks had come loose. He essentially relied on [the plaintiff's] inability to discover the hazard on casual inspection to establish that he too, as a reasonably prudent premises possessor, would not have discovered that the bricks had come loose. This evidence, even if left unrebutted, was insufficient to establish that a reasonably prudent premises possessor would not have discovered the step's condition. [*Id.* at 580.]

As is evident from the Court's analysis, a premises possessor who moves for summary disposition on the ground that he or she did not have constructive notice of the dangerous condition will normally have to present evidence to establish what constitutes a reasonable inspection under the circumstances to permit an inference that, given the nature of the hazard, he or she would not have discovered the hazard even if he or she had performed that inspection. *Id.*; see also *Moning v Alfono*, 400 Mich 425, 438; 254 NW2d 759 (1977) (stating that, in negligence cases, the general standard of care is a question of law for the court, but the specific standard of care is a question of fact for the jury). In the absence of evidence concerning what would constitute a reasonable inspection, a jury would in most cases be left to speculate as to whether the premises possessor would have discovered the hazard at issue had he or she conducted a reasonable inspection.

The proper context for evaluating whether a condition was discoverable with a reasonable inspection depends *both* on the nature of the hazard and the nature of the inspection that a reasonable premises possessor would employ under like circumstances.[3] See, e.g, *Merryman v*

---

[2] Notably, the Court left open the possibility that a casual inspection might be reasonable under some circumstances. See *Grandberry-Lovette*, 303 Mich App at 580-581.

[3] For example, with regard to a liquid spilled on the floor of a supermarket where there was evidence that the liquid was not visible on casual inspection, but showed signs of evaporation on close examination, whether the premises possessor could have discovered the spill would depend on the type of inspection that a reasonable premises possessor would have undertaken under like circumstances. If there was evidence that the fall occurred during a busy shopping period and that a reasonable premises possessor under those circumstances would have had an employee run a dust mop across the retail areas of the store every hour, which would have revealed the spill, and that the evaporation would not have occurred in less than an hour, then the jury could find that the retailer would have discovered the spill notwithstanding its latent character. Conversely,

*Hall*, 131 Mich 406, 407; 91 NW 647 (1902) (holding that it was error to exclude testimony concerning the construction of the boiler because the jury needed to understand the construction of the boiler and the ordinary practices for inspecting the boiler before it could determine whether ordinarily prudent and careful men would have removed the flues to ascertain whether the braces had become defective). In most cases, a premises possessor cannot adequately support his or her motion for summary disposition on the ground that he or she did not have constructive notice without presenting evidence as to what constitutes a reasonable inspection under the circumstances. Once the premises possessor presents evidence concerning what constitutes a reasonable inspection, the premises possessor can link the evidence concerning the inspection with the evidence concerning the nature of the hazard in a way that would permit a jury to infer that the premises possessor did not have constructive notice. If the evidence showed that the premises possessor actually performed a reasonable inspection, but did not discover the dangerous condition, the premises possessor could cite that evidence to establish that the reason he or she did not discover the hazard was because the hazard formed in such a short interval that it could not even be discovered with a reasonable inspection; in such a case, he or she would have no liability. See *Goldsmith v Cody*, 351 Mich 380, 387-389; 88 NW2d 268 (1958). Even where the evidence showed that the premises possessor failed to conduct a reasonable inspection, he or she could proffer evidence concerning the nature of the hazard and demonstrate that, given the nature of the hazard, even if he or she had conducted a reasonable inspection, the hazard would not have been discovered. In both cases, the burden would then shift to the nonmoving party to come forward with evidence to establish a question of fact. *Quinto*, 451 Mich at 362.

In this case, KSK argued that the undisputed evidence showed that Lowrey could not prove how the liquid at issue got on the stairs or how long it was there. KSK also noted that its manager, Evans, testified that either "a waitress or one of the staff will see it [a spill] and report it, or [that she] will see it on the security cameras." It then concluded that this evidence demonstrated that Lowrey would not be able to prove that KSK had constructive notice of the wet stairs at trial:

> It is possible that the water got on the stairs only five minutes or five seconds before [Lowrey's] fall. Someone walking down the stairs immediately in front of [Lowrey] could have spilled a drink right in front of her. As [Lowrey] cannot meet her burden of demonstrating that [KSK] had actual or constructive notice, [it] is not liable.

We do not agree that KSK supported its motion for summary disposition with evidence that, if left unrebutted, would establish that it did not have constructive notice of the wet and slippery condition of the stairs. Because KSK had the initial burden to produce evidence in support of its motion, its belief that Lowrey would be unable to meet her burden at trial was irrelevant and did not establish grounds for dismissing Lowrey's claim under MCR

if there was evidence that the fall occurred late at night when there are few customers and when a reasonable premises possessor would not have run a dust mop, but would instead have relied on casual inspection by its employees, the jury could find that the retailer would not have discovered the spill.

2.116(C)(10). Moreover, it did not proffer any evidence that would permit a reasonable finder of fact to find that it did not have constructive notice.[4]

Although KSK briefly cited Evans' testimony about how spills are normally discovered and handled, it did not present any evidence that that particular method for inspecting the premises was reasonable under the circumstances of that night. It did not cite any evidence concerning the weather conditions (there was testimony that it was snowing heavily and that snow was being tracked into the bar and onto the stairs), how busy the bar was at the time (there was testimony that there was normally a couple hundred or more patrons), and did not even cite evidence that the bar's employees actually used the stairs at issue.[5] In the absence of evidence tending to show that casual inspection by the employees while working was reasonable and that the employees actually used the stairs, a jury confronted with this evidence would be left to speculate as to whether KSK conducted a reasonable inspection under the circumstances and, if it did not, whether it could have discovered the wet conditions with a reasonable inspection. Thus, KSK failed to support its motion with evidence that, if left unrebutted, would establish that there was no genuine issue of material fact as to whether it had constructive notice. MCR 2.116(G)(3) and (4). At best, the evidence established that it was theoretically possible that it did not have constructive notice. See *Skinner*, 445 Mich at 164-166. By failing to discuss the evidence concerning the nature of the condition at issue—steps that were wet with snow tracked in from outside and which may have formed over the course of an hour or more—KSK failed to establish that the wet condition was such that it might have occurred in such a short interval that a reasonable inspection regime would not have revealed it. Without discussing the evidence, its claim that the wet condition might have arisen mere seconds before Lowrey's fall is nothing more than conjecture. Because KSK did not support its motion for summary disposition with evidence that would, if believed, establish that it did not have constructive notice of the wet stairs, the burden never shifted to Lowrey to establish a question of fact on that issue. *Quinto*, 451 Mich at 362.

The trial court erred when it granted KSK's motion for summary disposition on the ground that there was no genuine issue of fact that it did not have either actual or constructive notice. KSK failed to support its motion as required under MCR 2.116(G)(3) and (4) and the trial court should have denied the motion on that basis alone. *Grandberry-Lovette*, 303 Mich

---

[4] As this Court has stated, we must review a motion for summary disposition by considering only the evidence and arguments actually made before the trial court. *Barnard Mfg*, 285 Mich App at 380-381. We are not, therefore, at liberty to consider new arguments or evidence on appeal.

[5] There was evidence that would permit an inference that the bar's patrons tracked snow onto the stairs and that the stairs had become slippery for some time before Lowrey's fall. If the jury were to find the testimony concerning the presence of bouncers near these stairs to be credible, it could infer that the bouncers had actual notice of the dangerous condition or, in the exercise of reasonable care, would have discovered the dangerous condition.

-9-

App at 581. Because of our resolution of this issue, we need not address Lowrey's evidence that KSK actually knew through its agents that the steps were wet and slippery.[6]

## D. ALTERNATE GROUNDS

The trial court also determined that KSK was entitled to summary disposition on the basis of the other arguments that it made in its motion. KSK argued there that Lowrey's claim should be dismissed for three additional reasons: (1) Lowrey could not establish that a liquid caused her fall, (2) the stairs do not amount to a dangerous condition, and (3) it had no duty to warn or rectify the condition because it was open and obvious.

### 1. CAUSATION

To prove her claim at trial, Lowrey had to show that the dangerous condition was both the cause in fact and the proximate cause of her injury. *Skinner*, 445 Mich at 162-163. It would not be sufficient for Lowrey to present evidence that it was plausible that the wet stairs caused her fall; there must be evidence from which a reasonable jury could conclude that it is more likely than not that it did. *Id.* at 164-165.

In support of its motion, KSK selectively cited testimony by Lowrey that suggested that she was not sure about the cause of her fall. If this testimony had been left unrebutted, KSK would have been entitled to summary disposition. However, in response to KSK's motion, Lowrey cited her testimony where she clarified that she slipped and fell as a result of liquid on the stairs. She agreed that she saw the "liquid that caused [her] foot to slip" after she fell and, when asked, she stated that "Liquid" caused her foot to slip. Although her testimony seemed inconsistent, any inconsistencies were a matter of weight and credibility that could not be assessed on a motion for summary disposition. *Id.* at 161. This Court, like the trial court, must view Lowrey's testimony in the light most favorable to her when determining whether there is a genuine issue of fact. *Quinto*, 451 Mich at 362-363. Viewing Lowrey's testimony and the evidence in the light most favorable to her, it was deducible from the evidence using reasonable inferences that Lowrey slipped as a result of the wet stairs; that is, there was substantial evidence from which a jury might conclude that, but for KSK's failure to rectify the wet condition of the stairs, Lowrey would not have been injured. *Skinner*, 445 Mich at 164-165. Thus, there was a question of fact on the issue of causation; and, the trial court erred to the extent that it determined that summary disposition was warranted on this ground.

### 2. DANGEROUS CONDITION

KSK also argued that there was nothing about the character, location, or surrounding condition of the steps that made the steps unreasonably dangerous. See *Bertrand v Alan Ford,*

---

[6] As noted, there was testimony that one or more bouncers were stationed near the stairs and may have observed that the steps were wet. KSK, however, has been unable to identify its bouncers, did not apparently keep records of their service, and claimed to have no contact information for them.

-10-

*Inc*, 449 Mich 606, 614-617; 551 NW2d 185 (1995). In making this argument, KSK ignored the evidence that the steps had become wet; instead, it focused on the fact that—under normal conditions—there was nothing particularly dangerous about the steps. Considering the evidence that the steps had become wet, a reasonable jury could find that the risk of harm to invitees was unreasonable. Therefore, there was a question of fact on that issue. *Id.* at 617.

### 3. THE OPEN AND OBVIOUS DANGER DOCTRINE

A premises possessor has no duty to rectify a dangerous condition that is so obvious that the invitee might reasonably be expected to discover it. *Grandberry-Lovette*, 303 Mich App at 576. Where an otherwise dangerous condition is open and obvious, the open and obvious danger doctrine will cut off liability. *Id.*

The threshold issue of whether KSK owed a duty to Lowrey is a question of law to be decided by the court. *Riddle*, 440 Mich at 95. Because the open and obvious danger doctrine is an integral part of the definition of the duty owed by a premises possessor, whether the open and obvious danger doctrine will cut off liability will often be a question of law. See *Lugo v Ameritech Corp, Inc*, 464 Mich 512, 516-517; 629 NW2d 384 (2001). Nevertheless, there may be circumstances where there is a factual dispute that must be resolved before it can be determined whether there was a duty of care. See *Bertrand*, 449 Mich at 617. In *Bonin v Gralewicz*, 378 Mich 521, 526-527; 146 NW2d 647 (1966), our Supreme Court explained the distinction between the role of the jury and the role of the trial court when determining whether a defendant has a duty to the plaintiff:

> Usually, in negligence cases, whether a duty is owed by the defendant to the plaintiff does not require resolution of fact issues. However, in some cases, as in this one, fact issues arise. When they do, they must be submitted to the jury, our traditional finders of fact, for ultimate resolution and they must be accompanied by an appropriate conditional instruction regarding defendant's duty, conditioned upon the jury's resolution of the fact dispute.

Hence, where the facts necessary to make a determination regarding the duty owed by a defendant to a plaintiff are not disputed, it is the trial court's responsibility to decide the legal import of those facts. If there are disputed facts, which, depending on how those facts are resolved, could alter the determination that the defendant owed a duty to the plaintiff, those facts must be submitted to the jury with an appropriate instruction. *Id.*

"A dangerous condition is open and obvious if an average user with ordinary intelligence acting under the same conditions would have been able to discover the danger and the risk presented by the condition upon casual inspection." *Grandberry-Lovette*, 303 Mich App at 576-577 (quotation marks and citation omitted). To properly support a motion for summary disposition on the ground that the dangerous condition at issue was open and obvious, the premises possessor must present evidence that the dangerous condition—as it existed at the time the plaintiff encountered it—was such that reasonable people could not disagree that an average user of ordinary intelligence acting under those conditions would have been able to discover the danger and the risk presented by the condition on casual inspection. *Id.*; *Napier*, 429 Mich at 231-232. It is only after the moving party presents such evidence that the burden shifts to the

nonmoving party to present evidence to establish a question of fact as to whether an average user of ordinary intelligence would not have been able to discover the hazard on casual inspection. *Quinto*, 451 Mich at 362.

KSK did not present any evidence to support its contention that the wet stairs were open and obvious; more specifically, it did not present any evidence that an average patron with ordinary intelligence, who was acting under the same conditions as those present when Lowrey encountered the hazard, would "have been able to discover the danger and the risk presented by the condition upon casual inspection." *Grandberry-Lovette*, 303 Mich App at 576-577. There was testimony that the stairs were wet and slippery and that the stairwell was dark and crowded with patrons who were attempting to leave. Yet KSK did not present any evidence that an average person acting under those conditions would have discovered the danger and risk presented on casual inspection. Instead, KSK relied on the fact that courts have held that steps and water—under other circumstances—amounted to open and obvious hazards. That, however, was insufficient to establish that reasonable people could not differ as to the character of the hazard at issue in this case. *Grandberry-Lovette*, 303 Mich App at 576-577; see also *Napier*, 429 Mich at 231-232. Because KSK failed to present any evidence to support its contention that an average patron "with ordinary intelligence acting under the same conditions would have been able to discover the danger and the risk presented by the condition upon casual inspection," *Grandberry-Lovette*, 303 Mich App at 576-577, the trial court should have denied the motion to the extent that KSK asserted that Lowrey's claim was barred by the open and obvious danger doctrine.

## III. CONCLUSION

KSK failed to present evidence that, if left unrebutted, would establish that it did not have actual or constructive notice of the hazard at issue or that the hazard was open and obvious. Consequently, the buren to establish a question of fact did not shift to Lowrey and the trial court erred when it concluded otherwise. The trial court also erred to the extent that it determined that there was no question of fact as to whether wet stairs constitute an actionable hazard or on the issue of causation. For these reasons, the trial court should have denied KSK's motion. Accordingly, we reverse the trial court's decision, vacate its order granting summary disposition in KSK's favor, and remand for further proceedings. Given our resolution of the issues, we decline to address Lowrey's arguments concerning the spoliation of evidence.

Reversed, vacated, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. As the prevailing party, Lowrey may tax her costs. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Amy Ronayne Krause
/s/ Jane E. Markey

-12-