*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANTOINETTE PELLEGRINO,

        Plaintiff-Appellant,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Defendant-Appellee,

and

MICHAEL ANGELO MAGNOLI, EMILY ROSE
PLUMER, and ERIC WILLIAM PLUMER,

        Defendants.

UNPUBLISHED
June 16, 2022

No. 355805
Macomb Circuit Court
LC No. 2018-001417-NI

Before: LETICA, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

In this first-party action under the no-fault act, MCL 500.3101 *et seq.*, plaintiff appeals by right the trial court's judgment of no cause of action entered after a jury trial. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This action arises from two motor vehicle accidents in which plaintiff was involved, one on December 7, 2016, and the other on August 25, 2017. Plaintiff sought recovery of personal protection insurance (PIP) benefits from defendant State Farm Mutual Automobile Insurance Company, her no-fault insurer.[1] Plaintiff's contention was that the December 2016 and August

---

[1] In this opinion, we will refer to State Farm as "defendant," although we recognize that there were other defendants in the proceedings below who are not parties to this appeal.

2017 motor vehicle accidents caused or exacerbated injuries to her neck and back. Defendant, on the other hand, asserted that plaintiff's injures were the result of degenerative conditions, all of which predated the accidents. A jury trial was held during the midst of the COVID-19 pandemic, at which time several protocols were put in place to protect the participants and the jurors. Following a three-day trial, the jury found that plaintiff's injuries did not arise out of the December 2016 or August 2017 accidents. Accordingly, the trial court entered a judgment of no cause of action in favor of defendant.

Plaintiff subsequently filed a motion for judgment notwithstanding the verdict (JNOV) or a new trial, arguing, in relevant part, that the jury's verdict was against the great weight of the evidence and that her right to a fair trial was violated by the trial court's implementation of COVID-19 protocols during trial, including the conducting of jury voir dire by Zoom, and enforcing strict social distancing and masking requirements. The trial court denied plaintiff's motion. This appeal followed.

## II. EXCLUSION OF EVIDENCE

### A. STANDARD OF REVIEW

"[A] trial court's decision whether to admit evidence is reviewed for an abuse of discretion, but preliminary legal determinations of admissibility are reviewed de novo." *Nahshal v Freemont Ins Co*, 324 Mich App 696, 710; 922 NW2d 662 (2018) (quotation marks and citation omitted). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes, but a court also necessarily abuses its discretion by admitting evidence that is inadmissible as a matter of law." *Id*. (quotation marks and citation omitted).

In addition, "[t]his Court reviews questions of statutory interpretation de novo." *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 470; 719 NW2d 19 (2006). "The role of this Court in interpreting statutory language is to ascertain the legislative intent that may reasonably be inferred from the words in a statute." *Mich Ass'n of Home Builders v Troy*, 504 Mich 204, 212; 934 NW2d 713 (2019) (quotation marks and citations omitted). "[W]here the statutory language is clear and unambiguous, the statute must be applied as written." *Id*. (quotation marks and citations omitted) (alteration in original).

### B. ANALYSIS

Plaintiff first argues that the trial court abused its discretion by excluding evidence of, or reference to, defendant's handling of her claims. Plaintiff asserts that the evidence was relevant to (1) whether she suffered a bodily injury for which PIP benefits could be recovered under MCL 500.3105, (2) whether defendant should have paid PIP benefits for allowable expenses under MCL

500.3107(1)(a), and (3) whether defendant unreasonably refused to pay her claims, or unreasonably delayed payment of her claims, as contemplated by MCL 500.3148.[2] We disagree.

MRE 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Under MRE 402, relevant evidence is admissible, "except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court." Moreover, under MRE 402, "evidence which is not relevant is not admissible." Otherwise admissible evidence may also be excluded under MRE 403. In *Morales v State Farm Mut Auto Ins Co*, 279 Mich App 720, 730; 761 NW2d 454 (2008), this Court explained:

> The trial court also has discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. Evidence is unfairly prejudicial when there exists a danger that marginally probative evidence will be given undue or preemptive weight by the jury. [*Waknin v Chamberlain*, 467 Mich 329, 334 n 3; 653 NW2d 176 (2002) (quotation marks and citations omitted).]

In *Douglas v Allstate Ins Co*, 492 Mich 241, 257; 821 NW2d 472 (2012), the Michigan Supreme Court explained that under MCL 500.3105(1),[3] an insurer is only liable to pay PIP benefits if two threshold "causation requirements" are met:

> First, an insurer is liable only if benefits are "for accidental bodily injury . . . ." "[F]or" implies a causal connection. "[A]ccidental bodily injury" therefore triggers an insurer's liability and defines the scope of that liability. Accordingly, a no-fault insurer is liable to pay benefits only to the extent that the claimed benefits

---

[2] MCL 500.3148(1) provides:

> Subject to subsections (4) and (5), an attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits that are overdue. The attorney's fee is a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment.

[3] MCL 500.3105(1) states:

> Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of this chapter.

are causally connected to the accidental bodily injury arising out of an automobile accident.

Second, an insurer is liable to pay benefits for accidental bodily injury only if those injuries "aris[e] out of" or are caused by "the ownership, operation, maintenance or use of a motor vehicle. . . ." It is not any bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle. [*Douglas*, 492 Mich at 257 (citation omitted).]

Additionally, as explained in *Hamilton v AAA Mich*, 248 Mich App 535, 543; 639 NW2d 837 (2001), for a no-fault insurer to be liable for a particular expense, an insured party must present evidence of the following:

(1) the expense must have been incurred by the insured, (2) the expense must have been for a product, service, or accommodation reasonably necessary for the injured person's care, recovery, or rehabilitation, and (3) the amount of the expense must have been reasonable.

In this case, the trial court's decision to exclude evidence of or reference to defendant's handling of claims in general, or plaintiff's claims specifically, did not fall outside the range of reasonable and principled outcomes. While plaintiff asserts that the evidence is relevant to (1) whether her injuries arose from the use or operation of a motor vehicle, or (2) the recovery of PIP benefits for allowable expenses under MCL 500.3107(1)(a), we agree with the trial court that evidence regarding how defendant processed plaintiff's claims for PIP benefits would not have a tendency to make it more probable or less probable that plaintiff's injuries arose from the use or operation of a motor vehicle. Therefore, the evidence would not be relevant. See MRE 401. Similarly, evidence of how plaintiff's claims were handled by defendant would not tend to show that plaintiff incurred reasonable charges for reasonably necessary services for her care, recovery, and rehabilitation. See MCL 500.3107. To the extent that plaintiff claims that the evidence of defendant's handling of her claims would have shed light on whether defendant's refusal to pay PIP benefits was unreasonable, or whether the delay in paying PIP benefits was unreasonable, this is a determination underpinning a decision whether to award no-fault attorney fees, which is an issue for the trial court to decide after a trial. See MCL 500.3148.

In support of her argument that the trial court abused its discretion when it granted defendant's motion in limine, plaintiff relies on this Court's decision in *Morales*. In that case, we affirmed the trial court's order admitting evidence regarding the manner in which the defendant insurer processed the plaintiff's claim for PIP benefits, holding that it was relevant to "whether the plaintiff provided [the] defendant reasonable proof of the fact and amount of the loss sustained for purpose of penalty interest under MCL 500.3142(2)." *Morales*, 279 Mich App at 731. Additionally, while the evidence was not directly relevant to the plaintiff's claim for PIP benefits, we held that it was relevant to whether the defendant fairly processed the plaintiff's claim for PIP benefits, an issue that was key to the plaintiff's theory of the case. *Id.*

As in *Morales*, the trial court instructed the jury in this case that plaintiff would be entitled to interest under the no-fault act if the payment of PIP benefits was overdue, and that plaintiff had

the burden of proof with respect to whether she provided reasonable proof of loss and that the defendant failed to pay the claim within 30 days. Accordingly, even if the evidence of defendant's claims handling was not directly relevant to plaintiff's recovery of PIP benefits under MCL 500.3105 or the payment of allowable expenses under MCL 500.3107(1)(a), under *Morales*, it was arguably relevant to the limited issue of the recovery of interest under MCL 500.3142(2). However, because the jury found that plaintiff's injuries did not arise out of the December 2016 or August 2017 accidents, it never reached the issue of whether plaintiff was entitled to no-fault penalty interest. Accordingly, any error in this regard was harmless under MCR 2.613(A).[4] Therefore, plaintiff is not entitled to appellate relief with respect to this issue.

## III. THE GREAT WEIGHT OF THE EVIDENCE

### A. STANDARD OF REVIEW

We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *Anderson v Progressive Marathon Ins Co*, 322 Mich App 76, 91; 910 NW2d 691 (2017). "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Nahshal*, 324 Mich App at 710 (quotation marks and citation omitted).

### B. ANALYSIS

Plaintiff next argues that the trial court erred when it denied her motion for JNOV or a new trial, but the thrust of her argument is that the jury's determination that her injuries did not arise out of the motor vehicle accidents is against the great weight of the evidence. We disagree.

When deciding whether to grant a new trial on the basis that a verdict is against the great weight of the evidence, the trial court must determine whether the overwhelming weight of the evidence favors the unsuccessful party. *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 551; 965 NW2d 121 (2020). This Court will defer to the trial court's determination whether a verdict is against the great weight of the evidence, and we will not interfere with the jury's verdict by substituting our own judgment for that of the jury, unless the record evidence preponderates against the verdict to such an extent "that it would be a miscarriage of justice to allow the verdict to stand." *Id*.

We reject plaintiff's assertions that the evidence preponderated against the jury's verdict to the extent that allowing the verdict to stand would be a miscarriage of justice as the overwhelming weight of the evidence did not favor plaintiff. Contrary to plaintiff's arguments,

---

[4] MCR 2.613(A) provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.

the evidence admitted at trial supports the jury's finding that plaintiff's injuries did not arise out of the December 2016 or August 2017 accidents. While Dr. Richard Easton shared his opinion that plaintiff's surgeries were causally related to the two accidents, Dr. Saad Naaman offered testimony demonstrating plaintiff was experiencing a degenerative condition in both her back and neck before the December 2016 accident. It appears that the jury found Dr. Naaman's testimony more credible. See *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 605-606; 886 NW2d 135 (2016) ("[I]n reviewing a motion for JNOV we must construe all evidence and inferences from the evidence in the nonmoving party's favor"). While plaintiff also testified that her back and neck pain were aggravated and exacerbated by injuries she sustained in the motor vehicle accidents, and Dr. Easton's medical opinion supported this testimony, considering the evidence of plaintiff's history of back and neck problems before the accident, and that these conditions were degenerative in nature, the overwhelming weight of the evidence at trial did not preponderate against the jury's verdict to the extent that it would be a miscarriage of justice to allow the verdict to stand. See *Barnes*, 334 Mich App at 551. Accordingly, the trial court did not abuse its discretion when it denied plaintiff's motion for a new trial.

## IV. RIGHT TO A FAIR TRIAL

### A. STANDARD OF REVIEW

We review a trial court's decision denying a motion for a new trial for an abuse of discretion. *Anderson*, 322 Mich App at 91. "An abuse of discretion generally occurs only when the trial court's decision is outside the range of reasonable and principled outcomes . . . ." *Nahshal*, 324 Mich App at 710 (quotation marks and citation omitted).

### B. ANALYSIS

Lastly, plaintiff also argues that she was denied a fair trial as a result of the precautions and protocols implemented because of the COVID-19 pandemic. We disagree.

As the Michigan Supreme Court observed in *Wood v DAIIE*, 413 Mich 573, 581; 321 NW2d 653 (1982), "[t]he right to jury trial in civil litigation is of constitutional dimension," and is safeguarded by Const 1963, art 1, § 14. See also *Lowrey v LMPS & LMPJ, Inc*, 313 Mich App 500, 507; 885 NW2d 638 (2015), rev'd in part and vacated in part on other grounds 500 Mich 1 (2016) ("The parties to a civil action generally have the right to have a jury hear the evidence and resolve their dispute.").

In support of her claim that she was deprived of a fair trial, plaintiff relies on *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 103 n 9; 330 NW2d 638 (1982), in which the Court stated that "the trial court has a duty to assure that all parties who come before it receive a fair trial." In *Reetz*, the defendant argued that the plaintiff's closing argument was so inflammatory that it required a new trial. *Id.* at 99. In affirming this Court's decision to reverse and remand for a new trial, the Michigan Supreme Court explained that a verdict that is "tainted" by error should not be allowed to stand simply because the parties, or the trial court, failed to protect the interest of the party who incurred prejudice by timely action. *Id.* at 103.

As an initial matter, we observe that the trial court's COVID-19 protocols complied with administrative orders, local administrative orders, and guidelines promulgated by our Supreme

Court and the State Court Administrative Office. See Administrative Order 2020-19 ("Courts shall continue to expand the use of remote participation technology (video or telephone) as much as possible to reduce any backlog and to dispose of new cases efficiently and safely. . . . [A]s courts expand their use of remote technology tools, courts must continue to verify that participants are able to proceed remotely, and should permit some participants to appear remotely even if all participants are not able to participate electronically."); Administrative Order 2020-14 (limiting court room capacity to 10 and imposing social distancing of 10 feet).[5] With respect to plaintiff's claim that the COVID-19 protocols interfered with the jurors' abilities to see and hear evidence, as the trial court recognized, what ultimately renders this claim unsuccessful is that plaintiff cannot point to specific examples in the record to support her claim that the jurors could not see or hear the evidence during trial. Although plaintiff asserts that jurors shared this concern after trial, she has not submitted any affidavits in support of this claim and she does not point to any specific portion of the record to corroborate this allegation. The trial court noted in its opinion that it had observed conversations with jurors after the verdict in which some of the jurors expressed that they had hearing difficulties, but it noted that it did not hear any statements regarding whom the jurors had trouble hearing, such as whether it was counsel, witnesses, or the trial court itself.

Moreover, the trial court instructed the jurors on several occasions that they should speak up and make the court aware if they could not hear counsel, the trial court, or witnesses. Counsel for plaintiff also asked the jurors during trial if they could hear her properly as she was speaking with her mask on. On the first day of trial, before testimony commenced, the trial court indicated that it had checked the sight lines of visibility between the jurors and the witness box, and instructed the jurors to notify the court "if there's any issues at all." Also, when plaintiff first took the stand, the trial court inquired whether the jurors could hear her, and no juror responded that they could not. During defense counsel's cross-examination of plaintiff, the trial court interrupted counsel to confirm that the jurors had a good sight line of plaintiff, and no juror indicated that they did not. Before closing jury instructions, the trial court again asked the jurors if they were having any trouble hearing the court, instructing them to raise their hand if they did. When one juror indicated that there was difficulty hearing the court, the court stated that it would keep its voice up during the jury instructions.

In sum, the record reflects that the jurors were instructed to speak up if they could not hear the parties or witnesses or see any evidence presented at trial, and that the court undertook great efforts throughout the trial to ensure that the jurors were indeed able to see and hear the witnesses. Jurors are presumed to have followed their instructions. *Zaremba Equip, Inc v Harco Nat's Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013).

Moreover, the record does not support plaintiff's assertion that potential jurors who did not want to participate as jurors because of COVID-19 could simply opt out of jury duty, or that the trial court instructed the jury pool accordingly. Rather, although voir dire was conducted remotely by Zoom, the court advised the jurors that once a jury was selected, the jury would have to report to the court. The court also summarized the protocols that would be in place to protect the safety of the jurors who were present in person. Later, the court instructed the jurors that they could be

---

[5] Both AO 2020-19 and AO 2020-14 were rescinded after the conclusion of plaintiff's trial.

excused from serving on the jury in one of two ways: (1) by cause if there was a valid reason why a person could not or should not serve as a juror, and (2) by a party without any reason "because the law gives the lawyers for each side the right to excuse a limited number of jurors without giving any reason for doing so." There is no evidence in the record that any jurors who felt uncomfortable attending trial in person could simply opt out of jury duty.

Accordingly, plaintiff has not demonstrated that her right to a fair trial was undermined by the COVID-19 protocols, and the trial court did not abuse its discretion by denying plaintiff's motion for a new trial on this basis.

Affirmed. Defendant, as the prevailing party, may tax costs. MCR 7.219(A).

/s/ Anica Letica
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan